UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

*Judge Hellerstein*

---------------------------------------------------------------------------

INDEPENDENT POWER TANZANIA LTD.,

**COMPLAINT**

Plaintiff,

vs.

07 CV. No. 10366

THE GOVERNMENT OF THE REPUBLIC OF TANZANIA,

Defendant.

---------------------------------------------------------------------------

<u>INTRODUCTION</u>

1.      This action is brought on behalf of Independent Power Tanzania Ltd. ("IPTL"), which developed, financed, built, and operates, a privately financed 100 MW power plant in the Republic of Tanzania.  The IPTL plant is the largest entirely private investment in Tanzania, and the first privately-financed power project in Sub-Saharan Africa (the "Power Plant").

2.      IPTL's existence is presently in peril because the Government of the Republic of Tanzania has failed to honor its obligations under its unconditional guarantee of its wholly-owned utility -- Tanzania Electric Supply Company ("Tanesco") -- obligations under a Power Purchase Agreement.  Tanesco's payment obligations that are relevant here were determined by an arbitration award that was rendered in an arbitration between Tanesco and IPTL concerning that Power Purchase Agreement.   The Government of Tanzania, by virtue of its guarantee of Tanesco's obligations, owes to IPTL the sum that Tanesco has failed to pay.  IPTL has demanded payment pursuant to the terms of the Guarantee, but the Government of Tanzania has failed to make payment.

3.    The undisputed sum that the Government of Tanzania presently owes to IPTL is US$ 26,016,487.15.  IPTL seeks judgment in that amount.

## THE PARTIES

4.    Independent Power Tanzania Limited is a corporation organized under the laws of the Republic of Tanzania, with its principal place of business in Dar es Salaam, Tanzania.

5.    The Government of the United Republic of Tanzania ("GOT") is the national government of the Republic of Tanzania.

## JURISDICTION

6.    The GOT maintains an embassy in Washington DC, and a consulate within the City of New York.  Further, upon information and belief, the GOT maintains bank accounts within the United States, including, but not limited to, Bank of America accounts within New York (account number 994201GRF), and Washington D.C. (account 9953270001).  The GOT also owns real estate in Maryland and in New York City.  The GOT and TANESCO conduct extensive financial transactions with the World Bank, in Washington DC.

7.    The Court has jurisdiction over GOT pursuant to the Foreign Sovereign Immunities Act ("FSIA").  Under 28 U.S.C. § 1330(a), a district court has subject matter jurisdiction if a foreign state is "not entitled to immunity either under sections 1605-1607 . . . or under any applicable international agreement."  Pursuant to 28 U.S.C. § 1605(a)(1), an exception to foreign state immunity occurs when "the foreign state has waived its immunity either explicitly or by implication."  As discussed in Paragraph 12 below, GOT has explicitly waived its right of immunity.  Under 28 U.S.C. § 1330(b) this court has personal jurisdiction because subject matter jurisdiction exists under subsection (a) and service of process has been made under 28 U.S.C. § 1608.

BACKGROUND - THE TANZANIA POWER PLANT PROJECT

8.    By Agreement with IPTL dated as of June 8, 1995, the Government of Tanzania

stated, among other things, that

> Whereas,
>
> (1) The GOT as a matter of policy has decided to involve the private sector in the generation of electricity for sale to the national grid.
>
> (2) Consistent with the GOT's policy and guidelines, [IPTL] has proposed to design, insure, finance, acquire, construct, complete, own, operate and maintain an electric power plant (the "Facility") at Tegeta, Dar es Salaam, Tanzania, to supply electric power to Tanzania Electric Supply Company Limited (TANESCO).
>
> (3) Simultaneously herewith, [IPTL] is entering into a Power Purchase Agreement with TANESCO.
>
> (4) The GOT and [IPTL] are entering into this Agreement so that [IPTL's] proposal to build the Facility may be implemented in a manner that reflects the close cooperation between the public and private sectors in the generation of electricity for sale on the national grid.

9.    Accordingly, IPTL and Tanesco entered into a Power Purchase Agreement (the

"PPA") with an effective date of 26 May 1995.  Pursuant to the PPA, IPTL privately financed,

developed, constructed, and operates, a nominal 100 MW power plant in Tanzania.

10.    Pursuant to the PPA, Tanesco is to pay IPTL, on a monthly basis, and for a term

of twenty years, capacity payments, energy payments and supplemental payments.

THE GOVERNMENT OF TANZANIA GUARANTEE OF PAYMENT

11.    By guarantee dated June 8, 1995, entered into between The Government of the

United Republic of Tanzania (the "GOT"), on the one side, and IPTL on the other, the GOT

> irrevocably and unconditionally guarantee[d] and promise[d] to pay [IPTL] any and every sum of money TANESCO is obligated to pay to [IPTL] pursuant to the Power Purchase Agreement TANESCO has failed to pay in accordance with the terms of those agreements.

The obligations of the Guarantor under this Guarantee shall be absolute and unconditional and shall remain in full force and effect until all the covenants, terms, and agreements set forth in the Power Purchase Agreement, shall have been completely discharged and performed, unless waived by [IPTL] in writing.

12.  Further, the GOT has expressly represented that the Guarantee and the obligations it pertain to are commercial, not governmental, acts, and that it waives any immunity with respect to any of its assets, "other than its aircraft, naval vessels and other defense related assets or assets protected by the diplomatic and consular privileges under the State Immunity Act of England or the Foreign Sovereign Immunities Act of the United States or any analogous legislation (the "Protected Assets")":

The Guarantor irrevocably and unconditionally agrees that it is subject to suit in the England[1] with respect to its obligations hereunder, and that the execution, delivery, and performance of this Guarantee constitute private and commercial acts of the Guarantor.  The GOT hereby irrevocably and unconditionally agrees: (i) that should any proceedings be brought against the GOT or its assets, other than its aircraft, naval vessels and other defense related assets or assets protected by the diplomatic and consular privileges under the State Immunity Act of England or the Foreign Sovereign Immunities Act of the United States or any analogous legislation (the "Protected Assets"), in any jurisdiction in connection with this Guarantee or any of the transactions contemplated by this Guaranty, no claim of immunity from such proceedings will be claimed by or on behalf of the GOT on behalf of itself or any of its assets (other than the Protected Assets); (ii) it waives any right of immunity which it or any of its assets (other than the Protected Assets) now has or may in the future have in any jurisdiction in connection with any such proceedings; and (iii) it consents generally in respect of the enforcement of any judgment against it in any such proceedings in any jurisdiction to the giving of any relief or the issue of any process in connection with such proceedings (including without limitation, the making, enforcement, or execution against or in respect of any of its assets whatsoever (other than the Protected Assets) regardless of the use or intended use of the asset.

A copy of the Guarantee is annexed as Exhibit A.

---

[1]  Non-exclusive jurisdiction.

13.     While the Guarantee contains an arbitration clause calling for the arbitration of any disputes under the Guarantee, this action does not concern any disputes under the Guarantee. Rather, all such disputes have already been arbitrated in the ICSID Arbitration with TANESCO. This action is solely to collect sums that are indisputably due pursuant to the Guarantee as already held in the ICSID Arbitration Award.  Specifically, this action is only to collect those sums that Tanesco has not disputed are due under the PPA, and hence are presently due under the Guarantee.  Accordingly, this suit is not subject to the arbitration clause in the Guarantee.

## THE ICSID ARBITRATION

14.     On 25 November 1998,  after the Power Plant was constructed, Tanesco commenced the ICSID arbitration against IPTL.  Tanesco sought generally to (1) terminate the Power Purchase Agreement between it and IPTL, and (2) failing termination, to reduce the tariff set forth in that Power Purchase Agreement.

15.     The Government of Tanzania was involved in the arbitration, and aware throughout of the proceedings and issues under deliberation.

## THE ICSID ARBITRATION AWARD

16.     As set forth above, IPTL and Tanesco conducted a lengthy arbitration with respect to disputes arising in connection with the PPA.  Included among those disputes was their dispute about the amount of the monthly capacity payments under the PPA.  After extensive hearings and the issuance of several preliminary awards, the Tribunal issued the final ICSID Award.  By Final Award dated July 12, 2001, ICSID rendered an Award in the arbitration entitled *Tanzania Electric Supply Company Limited v. Independent Power Tanzania Limited* (ICSID Case No. ARB/98/8)  (the "ICSID Award").   The full ICSID Award is published on the ICSID website.

17.     In that ICSID Award, the ICSID Tribunal ordered Tanesco to, among other things, comply with its obligations under the Power Purchase Agreement.  The Power Purchase Agreement has a term of 20 years.

18.     Pursuant to the Power Purchase Agreement (and the ICSID Award), Tanesco is obligated to make monthly capacity, energy, supplemental and Penalty/Bonus payments to IPTL [PPA, p. 16-17].  In the event that Tanesco has some dispute about a portion of the payments, IPTL is still entitled to timely payment of the undisputed portion of the payments, while any dispute is resolved as to the disputed portion of the payments [PPA, p. 20-21].

19.     During the course of the arbitration, the parties agreed-upon a financial model that would determine the monthly capacity payments [Award, p. 25, ¶ 2B].  The financial model was made part and parcel of the ICSID Award [Award, p. 25,  ¶ 2B].

20.     Accordingly, the ICSID Award requires Tanesco to pay to IPTL, on a monthly basis, capacity payments determined in accordance with the ICSID Financial Model.

21.     The Government of Tanzania, by virtue of its guarantee of TANESCO's payment obligations, is obligated to pay to IPTL sums that Tanesco is required to pay pursuant to the Power Purchase Agreement and ICSID Award, but does not do so.

EVENTS SINCE THE CONCLUSION OF THE ICSID ARBITRATION

22.     For approximately five years, IPTL submitted capacity payment invoices to Tanesco that were all calculated based on the ICSID Financial Model.  Tanesco's agent Dr. Martin Swales reviewed the invoices, and based on his certification that they were calculated in accordance with the ICSID Financial Model, Tanesco paid the invoices (albeit often very late).

However, beginning in January 2007, Tanesco stopped making payments[2], despite the fact that (1) the invoices were calculated in accordance with the ICSID Financial Model in the same manner as they had been for the previous five years, and (2) Dr. Martin Swales certified that the calculations with respect to each and every invoice were performed correctly under the ICSID Financial Model. As indicated above, Dr. Swales was intimately involved in the ICSID arbitration, and was deeply involved in the preparation of the financial model that is part of the ICSID Award.

23.    Despite the fact that a great deal of the capacity payment invoices are undisputed by Tanesco, and hence the undisputed sums are unquestionably due to IPTL, Tanesco and the Government of Tanzania have refused to pay to IPTL even the undisputed portions, and have prevented the Bank of Tanzania from releasing any funds from escrow to fulfill those payment obligations.

24.    Presently, the total payments due to IPTL total US$44,567,717.70 million, plus overdue interest of US$1,442,788.30 through November 1, 2007.

25.    The amount of the undisputed payments alone is approximately US$ 26,016,487.15 million, plus overdue interest of US$1,153,395.52, through November 1, 2007.

26.    In this action, IPTL seeks recovery of only the portion due to IPTL that is not disputed.

27.    As indicated above, each of these invoices was reviewed by, and certified as correctly calculated by, Tanesco's agent Dr. Martin Swales.

---

[2]    Other than US$ 3,599,918 received in February2007 for December 2006 Energy Payment and US$ 3,216,004 received in May 2007 for partial payment of the November 2006 Capacity Payment.

28.    IPTL has demanded on numerous occasions that Tanesco release the undisputed portions of the payments that are overdue, in compliance with the PPA and Tanesco's obligations under the ICSID Award.  However, Tanesco has refused to comply with that Award and to comply with its obligations under the PPA.

29.    The consequence of this is that IPTL is facing imminent financial ruin.  It is unable to maintain the plant, service its debt and other financial obligations, or to produce electricity when it is needed.  It is believed that this is Tanesco's very intent -- to effectively expropriate the plant for its own purposes, by violating the ICSID Convention and ICSID Award.

30.    Despite numerous requests to the Government of Tanzania, it has failed to comply with its obligations under its guarantee of Tanesco's obligations, and has made no payment to IPTL.

<u>CLAIM FOR RELIEF</u>

31.    IPTL repeats and realleges the allegations contained in paragraphs 1 through 30 as if fully set forth herein.

32.    Based on the terms of the PPA and the ICSID Arbitration Award, TANESCO presently owes to IPTL the sum of US$46,010,506.00 including the overdue interest.

33.    The portion of that sum which is undisputed is US$27,169,882.67 including the overdue interest.

34.    IPTL has made all necessary demands of the Government of Tanzania Guarantee with respect to the sum due.

35.    Based on the terms of the Guarantee, the Government of Tanzania owes to IPTL the sum of US$ 27,169,882.67.

36.    The Government of Tanzania has failed to make the payment as required.

37.    Wherefore, IPTL demands judgment in the sum of $27,169,882.67, against the

Government of Tanzania, on the Guarantee.

Dated:        New York, New York
              November 15, 2007

                              NIXON PEABODY LLP

                              By:

                                    Robert C. Sentner (RS 5223)
                              Attorneys for Plaintiff
                              437 Madison Avenue
                              New York, NY 10022
                              (212) 940-3000

# EXHIBIT A

**DATED THIS 8TH DAY OF JUNE 1995**

**BETWEEN**

**GOVERNMENT OF THE UNITED REPUBLIC OF TANZANIA**

**AND**

**INDEPENDENT POWER TANZANIA LIMITED**

_____

**GUARANTEE**

_____

## GUARANTEE

**THIS GUARANTEE** is made at Dar es Salaam, United Republic of Tanzania the of 8th day of June 1995

**BETWEEN:**

**THE GOVERNMENT OF THE UNITED REPUBLIC OF TANZANIA** acting through its Ministry of Water, Energy and Minerals (hereinafter referred to as the "Guarantor") of the one part; and

**Independent Power Tanzania Limited** a limited company incorporated under the laws of Tanzania, whose registered office is located at 5th Floor, Extelcoms House, Samora Avenue, P O Box 1461, Dar-es-Salaam, United Republic of Tanzania (hereinafter referred to as the "Company") of the other part.

**WHEREAS:**

(A)     The Guarantor and the Company have entered into an Implementation Agreement (the "Implementation Agreement") dated 8th day of June 1995.

(B)     The Tanzania Electric Supply Company Limited ("TANESCO") has entered into a Power Purchase Agreement with the Company (the "Power Purchase Agreement") dated 26th day of May 1995

(C)     In accordance with Article XXII of the Implementation Agreement, the Guarantor has agreed to enter into this Guarantee of the payment obligations of TANESCO under the Power Purchase Agreement.

**NOW IT IS HEREBY AGREED** as follows:

1    **GUARANTEE**

1.1    **Guarantee**

In consideration of the Company entering into the Power Purchase Agreement with TANESCO the Guarantor hereby irrevocably and unconditionally guarantees and promises to pay the Company any and every sum of money TANESCO is obligated to pay to the Company pursuant to the Power Purchase Agreement TANESCO has failed to pay in accordance with the terms of those agreements.

1.2    **Waiver of Defence**

The obligations of the Guarantor under this Guarantee shall be absolute and unconditional and shall remain in full force and effect until all the covenants, terms, and agreements set forth in the Power Purchase Agreement, shall have been completely discharged and performed, unless waived by the Company in writing. The obligations of the Guarantor shall not be modified or impaired upon the happening from time to time of any event, including the following:

1.2.1    The extension of time for payment of any amounts due or of time for performance of any of the covenants, terms, or agreements of TANESCO, set forth in the Power Purchase Agreement.

1.2.2    Amendments to the Power Purchase Agreement that do not affect in any material way the rights or obligations of TANESCO, or the Company under those agreements.

1.2.3    The failure, omission, or delay by the Company to enforce, ascertain, or exercise any right, power or remedy under or pursuant to the terms of the Power Purchase Agreement, Insurance, or this Guarantee;

1.2.4    The bankruptcy, insolvency, or other failure or financial disability of TANESCO, or the Company; or

1.2.5    The addition, or partial or entire release of any guarantor, maker, or other Party (including TANESCO) primarily or secondarily responsible for the performance of any of the covenants, terms, or agreements set forth in the Power Purchase Agreement or by any extension, waiver, amendment, or thing whatsoever that may release or create a defence for a guarantor (other than performance in accordance with the terms of the Power Purchase Agreement).

**1.3    Continuing Guarantee**

1.3.1    This Guarantee shall be a continuing security and, accordingly, shall extend to cover the balance due to the Company at any time from TANESCO under the Power Purchase Agreement. No demand made by the Company hereunder shall prejudice or restrict the right of the Company to make further or other demands.

**1.4    Additional Security**

1.4.1    This Guarantee shall be in addition to, and not in substitution for or derogation of, any other security that the Company may at any time hold in respect of the obligations of TANESCO under the Power Purchase Agreement.

1.4.2    The Company may enforce this Guarantee notwithstanding that it may hold any other guarantee, lien, or security of or for the obligations of TANESCO under the Power Purchase Agreement or have available to it  any other remedy at law or equity.

**1.5    Preliminary Recourse**

1.5.1    Before taking steps to enforce this Guarantee and demanding payment from the GOT, the Company shall be obliged only to make demand in writing for payment from TANESCO. After 30 Days (during which time the Company shall make further requests for payment, with a copy to the GOT of each request, from TANESCO from the date payment was due, the Company may notify the GOT in writing that payment from TANESCO is past due and make a demand for payment from the GOT under this Guarantee, and the GOT shall make payment within five (5) Days. Late payments hereunder shall bear mark-up at an annual rate equal to the then applicable one-year LIBOR rate plus three (3) percentage points. Amounts in dispute under the Power Purchase Agreement shall be deemed not to be due and owing for purposes of this Guarantee until expiration of any dispute resolution procedures provided in each of the respective Agreements.

1.5.2    Except as provided in Article 1.4.1, the Company shall not be obliged before taking steps to enforce this Guarantee to exercise any other remedies that may be available to it under or in respect of the Power Purchase Agreement  or to obtain judgment against TANESCO thereon.

**1.6    Certification**

Any demand for payment made pursuant to this Guarantee shall be made in person by a duly authorized officer of the Company at the Guarantors offices at Sokoine Drive, Mkwepu Street, PO Box 2000, Dar es Salaam, United Republic of Tanzania and shall be accompanied by a certificate signed by a duly authorized officer of the Company stating that:

"We hereby certify that (1) [specify Company], (the "Company") is making this demand on the Government of the Republic of Tanzania (the "Guarantor") in the amount of United States Dollars [insert amount] in accordance with Article 1 of the Guarantee dated 8th day of June 1995, between the Guarantor and the Company; (2) the amount specified above is due and payable by the Tanzania Electric Company Limited ("TANESCO") under the Power Purchase Agreement between the Company and TANESCO and no part of the amount specified above is the subject of a dispute between the Parties; (3) demand in writing for payment from TANESCO has been made; (4) for a period of not less than 30 Days from the date payment was due, further request for payment have been made to TANESCO or to obtain the payment of such amount; and (5) such amount, on the date hereof, remains unpaid by TANESCO".

### 1.7    Subordination

Any right that the Guarantor may at any time have to be indemnified by TANESCO in respect of sums paid out by the Guarantor in performance of this Guarantee shall be subordinated to the rights of the Company to recover from TANESCO in full all sums that may at any time become due from TANESCO under the Power Purchase Agreement.

### 1.8    No Set-off

No set-off, counterclaim, reduction, or diminution of any obligation that the Guarantor has or may have against the Company shall be available to the Guarantor against the Company in connection with any obligation of the Guarantor to the Company under this Guarantee; provided, however, that notwithstanding the foregoing the Guarantor shall have the benefit of all rights of set-off, counterclaim, reduction, or diminution of any obligations that are available to TANESCO, pursuant to the Power Purchase Agreement or that are otherwise directly related to the Project.

### 1.9    Consent to Jurisdiction

Each Party hereby consents to the jurisdiction of the courts of London, England for any action filed by the Party to enforce any award or decision of any arbitrator(s) or expert(s) who were duly appointed under this Agreement to resolve any Dispute between the Parties. With respect to any such proceedings for the enforcement of any such award against the assets of a Party (other than the Protected Assets in the case of enforcement proceedings against the GOT):

(a)    The GOT appoints the Commercial Counsellor of The United Republic of Tanzania in London (or, in his absence, a responsible officer in the Tanzania High Commission) whose address is presently 43 Hertford Street, London W1Y 7TF, England to receive for and on its behalf service of process in such jurisdiction in any such enforcement proceeding;

(b)    The Company appoints Mr. Ahmed Daya whose address is presently 242,

Station Road, Edgware, Middlesex HA8 7AR, England to receive for and on its behalf service of process in such jurisdiction in any such enforcement proceeding;

(c)     Each Party shall maintain in England a duly appointed agent for the receipt of service of process and shall notify the other Party of the name and address of such agent and any change in such agent and/or the address of such agent; and

(d)     Each Party agrees that the failure by any such agent for the receipt of service of process to give it notice of any process that has been served on such agent shall not impair the validity of such service or of any judgment based thereon.

## 2     REPRESENTATIONS AND WARRANTIES

The Guarantor represents and warrants that, as of the date hereof:

### 2.1 Power and Authority

The Guarantor has full power, authority, and legal right to incur the obligation, to execute and deliver, and to perform and observe the terms and provisions of this Guarantee.

### 2.2 Legal Validity

This Guarantee constitutes legal, valid, binding, and enforceable obligations of the Guarantor in accordance with its terms.

### 2.3 Approvals

All necessary action has been taken, and all approvals required have been obtained, under the Laws of Tanzania to authorize the execution, delivery, and performance of this Guarantee.

### 2.4 Tax

In addition to any amount then due and payable to the Company by TANESCO under the Power Purchase Agreement respectively, and payable by the Guarantor under the terms of this Guarantee, the Guarantor shall be liable for any duty, impost, levy, charge, fee or tax of whatsoever nature ("Tax") levied or imposed by a Governmental Authority or any political subdivision or authority thereof on or with regard to any payment hereunder unless the payment, if made by TANESCO would itself have been subject to the Tax. If under applicable law the Guarantor is unable to pay the Tax and the Company is required to pay the Tax, the amount to be paid to the Company hereunder shall be increased by an amount sufficient so that such payment, net of the Tax, would equal the payment the Company would have received from TANESCO net of any Taxes applicable to payment from TANESCO to the Company.

### 2.5 Full Faith and Credit

The obligations and covenants of the Guarantor in this Guarantee constitute unconditional obligations of the Guarantor, for the performance of which the full faith and credit of the Guarantor is pledged.

### 2.6 Sovereign Immunity

The Guarantor irrevocably and unconditionally agrees that it is subject to suit in the England with respect to its obligations hereunder, and that the execution, delivery, and performance of this Guarantee constitute private and commercial acts of the Guarantor. The GOT hereby irrevocably and unconditionally agrees: (i) that should any proceedings be brought against the GOT or its assets, other than its aircraft, naval vessels and other defence related assets or assets protected by the diplomatic and consular privileges under the State Immunity Act of England or the Foreign Sovereign Immunities Act of the United States or any analogous legislation (the "Protected Assets"), in any jurisdiction in connection with this Guarantee or any of the transactions contemplated by this Guaranty, no claim of immunity from such proceedings will be claimed by or on behalf of the GOT on behalf of itself or any of its assets (other than the Protected Assets); (ii) it waives any right of immunity which it or any of its assets (other than the Protected Assets) now has or may in the future have in any jurisdiction in connection with any such proceedings; and (iii) it consents generally in respect of the enforcement of any judgment against it in any such proceedings in any jurisdiction to the giving of any relief or the issue of any process in connection with such proceedings (including without limitation, the making, enforcement, or execution against or in respect of any of its assets whatsoever (other than the Protected Assets) regardless of the use or intended use of the asset.

## 3    UNDERTAKING

### 3.1 Duration

This Guarantee shall remain in full force and effect from and after the date hereof until the termination of the initial term of the Power Purchase Agreement and for so long thereafter as any amount owned the Company by the Guarantor, TANESCO, in connection with such initial term is or may be outstanding.

### 3.2 Performance of Agreements

The Guarantor shall not take any action that would prevent or interfere with the performance by TANESCO of any of its obligations under the Power Purchase Agreement (except, in the case of any unintentional action, where the Guarantor promptly remedies such action).

**4    NO WAIVER; REMEDIES CUMULATIVE**

**4.1 No Waiver**

No failure or delay by the Company to exercise any right or remedy under this Guarantee shall constitute a waiver of that right or remedy. No single or partial exercise of any right or remedy shall preclude any other or further exercise thereof or the exercise of any other right or remedy. No waiver by the Company shall be effective unless it is in writing.

**4.2 Remedies Cumulative**

The rights and remedies of the Company provided by this Guarantee are cumulative and not exclusive of any rights or remedies provided by law.

**5    NOTICES**

**5.1 Address for Notice**

All notices or other communications (together "Notices") to be given or made hereunder shall be in writing, shall be addressed for the attention of the person indicated below and shall be delivered personally or sent by registered or certified mail or facsimile. All Notices shall be deemed delivered (a) when presented personally, (b) if received on a business Day of the receiving Party, when transmitted by facsimile to the receiving Party's facsimile number specified above and, if received on a Day that is not a business Day of the receiving Party, on the first business Day of the receiving Party following the date transmitted by facsimile to the receiving Party's facsimile number specified above, (c) one (1) Day after being delivered to a courier for overnight delivery, addressed to the receiving Party, at the address indicated above (or such other address as such Party may have specified by notice delivered to the delivering Party at its address or facsimile number specified above) or (d) five (5) Days after being deposited in a regularly maintained receptacle for the postal service in Tanzania, postage prepaid, registered or certified, return receipt requested, addressed to the receiving Party, at the address indicated above (or such other address as the receiving Party may have specified by written Notice delivered to the delivering Party at its address or facsimile number specified above). Any notice given by facsimile shall be confirmed in writing delivered personally or sent by registered or certified mail, but the failure to so confirm shall not render void or invalidate the original notice if it is in fact received by the Party to which it is addressed. The address for service of each Party and its respective facsimile number shall be:

5.1.1  For the Guarantor    :    The Government of United Republic of Tanzania

        *    Attention    :    The Principal Secretary
                                 Ministry of Water, Energy and Minerals

        *    Address    :    Sokoine Drive, Mkwepu Street
                                 PO Box 2000
                                 Dar es Salaam
                                 United Republic of Tanzania

        *    Facsimile    :    51-44071

5.1.2  For the Company    :    Independent Power Tanzania Ltd.

        *    Attention    :    Mr. James Mugemalira

        *    Address    :    5th Floor, Extelcoms House
                                 Samora Avenue, P O Box 1461
                                 Dar es Salaam
                                 United Republic of Tanzania

        *    Facsimile    :    51-46017

        *    with a copy to the Company's counsel:    LONG & COMPANY

        *    Attention    :    Ms. Joanne Long

        *    Address    :    9B Bukit Ceylon, 50200 Kuala Lumpur, Malaysia

        *    Facsimile    :    603- 201 4832

or such other addresses or facsimile numbers as either Party may have notified to the other Party in accordance with this Article 5.1.

## 5.2 Effectiveness of Service

Each Notice under this Guarantee shall be effective only upon actual receipt thereof.

# 6    ASSIGNMENT

## 6.1 Assignment by the Guarantor

The Guarantor may not assign or transfer all or any part of its rights or obligations hereunder without the prior written consent of the Company.

### 6.2 Assignment by the Company

The Company may not assign or transfer all or any part of its rights or obligations hereunder without the prior written consent of the Guarantor. Notwithstanding the provision of the immediately preceding sentence, for the purpose of construction or permanent financing of the GOT, the Company may assign or create a security interest over its rights and interests in and to this Guarantee.

### 6.3 Successors

This Guarantee shall be binding upon and inure to the benefit of the Guarantor and the Company and the respective successors and permitted assigns of each.

## 7    GOVERNING LAW AND ARBITRATION

### 7.1 Governing Law

The rights and obligations of the Parties under or pursuant to this Guarantee shall be governed by and construed according to the Laws of Tanzania.

### 7.2 Arbitration

Any dispute or difference between the Parties arising out of or in connection with this Agreement shall be arbitrated in accordance with Article 21.2 of the Implementation Agreement.

## 8    MISCELLANEOUS

### 8.1 Severability

If one or more provisions contained in this Guarantee is held or found to be invalid, illegal, or unenforceable in any respect, the provision(s) shall be given effect to the extent permitted by law and the invalidity, illegality, or unenforceability of any provision shall not affect the validity of the remaining provisions of this Guarantee.

### 8.2 Definitions

The capitalized terms used but not defined in this Guarantee shall have the meanings given to them in the Implementation Agreement.

**IN WITNESS WHEREOF,** this Guarantee has been executed the day first above written.

**THE GOVERNMENT OF THE UNITED REPUBLIC OF TANZANIA**

.....................................

By      :  RAPHAEL MOLLEL
Title   :  PRINCIPAL SECRETARY
           MINISTRY OF WATER, ENERGY AND MINERALS

**INDEPENDENT POWER TANZANIA LTD.**

.....................................

By      :  JAMES B. RUGEMALIRA
Title   :  DIRECTOR