Joseph J. Saltarelli
HUNTON & WILLIAMS LLP
200 Park Avenue
New York, New York  10166
(212) 309-1000

*Attorneys for Defendant,*
*The Government of the*
*United Republic of Tanzania*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
                                                           :
INDEPENDENT POWER TANZANIA LTD.,                           :
                                                           :
                              Plaintiff,                   :
                                                           :
                   - against -                             :        07 CV 10366 (AKH)
                                                           :
THE GOVERNMENT OF THE REPUBLIC                             :
OF TANZANIA,                                               :
                                                           :
                              Defendant.                   :
                                                           :
-----------------------------------------------------------X


**MEMORANDUM OF LAW**
**IN SUPPORT OF DEFENDANT'S**
**<u>MOTION TO DISMISS THE COMPLAINT</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

Preliminary Statement ................................................................................................... 1

Statement of Facts ......................................................................................................... 4

        A.    Disputes Arising Under the Guarantee are Subject to Binding
             Arbitration. .................................................................................................... 6

        B.    IPTL's Claims Have No Nexus To The United States. ..................................... 8

Argument ....................................................................................................................... 8

      POINT I      IPTL'S ACTION SHOULD BE DISMISSED BECAUSE THE
                    COURT LACKS SUBJECT MATTER JURISDICTION ........................ 13

      POINT II     IPTL'S ACTION SHOULD BE DISMISSED BECAUSE THE
                    COURT LACKS PERSONAL JURISDICTION OVER GOT ................ 13

        A.    The Court Lacks Personal Jurisdiction Over GOT Because IPTL
             Failed to Properly Serve GOT in Strict Compliance with the FSIA ............... 13

        B.    The Court Also Lacks Personal Jurisdiction Over GOT Because
             Tanzania Does Not Have Constitutionally Sufficient Minimum
             Contacts with the U.S. ................................................................................. 18

      POINT III    IN THE ALTERNATIVE, THE COURT SHOULD DISMISS
                    THE ACTION ON THE GROUND OF FORUM NON
                    CONVENIENS ..................................................................................... 22

Conclusion .................................................................................................................... 25

## TABLE OF AUTHORITIES

**CASES**

Alberti v. Empresa Nicaraguense de la Carne,
    705 F.2d 250 (7th Cir. 1983) .................................................................................. 17

Argentine Republic v. Amerada Hess Shipping Corp.,
    488 U.S. 428 (1989).............................................................................................. 13

Autotech Technologies v. Integral Research & Development Corp.,
    499 F.3d 737 (7th Cir. 2007) ................................................................................. 17

Chevron U.S.A. Inc., By and Through Chevron Resources Co. v. Consolidated Edison
    Co. of New York, Inc.,
    872 F.2d 534 (2nd Cir. 1989)................................................................................. 11

Chew v. Dietrich,
    143 F.3d 24 (2d Cir. 1998)............................................................................... 19 n.5

Crimmins Contracting Co. v. City of New York,
    74 N.Y.2d 166, 172-73, 544 N.Y.S.2d 580, 583-84, 542 N.E.2d 1097 (1989) ........................ 9

Eaton Vance Mgmt. v. ForstmannLeff Assocs., LLC,
    2006 U.S. Dist. LEXIS 55741 at *15 (S.D.N.Y. 2006)..................................................... 11-12

Ellenbogen v. The Canadian Embassy,
    2005 WL 3211428, 2 (D.D.C. 2005) ...................................................................... 17

Finamar Investors, Inc. v. Republic of Tajikistan,
    889 F. Supp. 114 (S.D.N.Y. 1995) ......................................................................... 15

Frontera Resources Azerbaijan Corp. v. State Oil Co. of the Azerbaijan Republic,
    479 F. Supp. 2d 376 *S.D.N.Y. 2007)................................................................. 18, 20 n.6

Iragorri v. United Technologies Corp.,
    274 F.3d 65 (2nd Cir. 2001)................................................................................. 22-23

Letelier v. Republic of Chile,
    748 F.2d 790 (2nd Cir. 1984)................................................................................. 21

Lewis & Kennedy, Inc. v. Permanent Mission of the Republic of Botswana to the United
    Nations, 2005 WL 1621342, at *4 (S.D.N.Y. 2005) ................................................. 17

Magnus Electronics, Inc. v. Royal Bank of Canada,
    620 F.Supp. 387 (N.D. Ill. 1985) ........................................................................... 15

Mastrobuono v. Shearson Lehman Hutton, Inc.,
    514 U.S. 52 (1995)................................................................................................ 9

New Hampshire Ins. Co. v. Wellesley Capital Partners, Inc.,
   200 A.D.2d 143 N.Y.S.2d 407 (1st Dep't 1994) .................................................. 15

Norex Petroleum Ltd. v. Access Industries, Inc.,
   416 F.3d 146 (2nd Cir. 2005) ............................................................................... 23

Piper Aircraft Co. v. Reyno,
   454 U.S. 235 (1981) ............................................................................................. 22

Pollux Holding, Ltd. v. The Chase Manhattan Bank,
   329 F.3d 64 (2nd Cir. 2003) ................................................................................. 22

Rubin v. Sona Int'l Corp.,
   457 F. Supp. 2d 191 (S.D.N.Y. 2006) ................................................................. 11

Saudi Arabia v. Nelson,
   507 U.S. 349 (1993) ............................................................................................... 8

Shen v. Japan Airlines,
   918 F. Supp. 686 (S.D.N.Y. 1994) ...................................................................... 20

Texas Trading & Milling Corp. v. Federal Republic of Nigeria,
   647 F.2d 300 (2d Cir. 1981), cert. denied, 454 U.S. 1148 (1982) .................... 8, 18

Transaero, Inc. v La Fuerza Aerea Boliviana,
   30 F.3d 148 (D.C. Cir. 1994) .............................................................................. 17

U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.,
   241 F.3d 135 (2d Cir. 2001) ...................................................................... 18, 19 n.5

Underwood v. United Republic of Tanzania,
   1995 WL 46383 (D.D.C. 1995) .......................................................................... 15

Verlinden B.V. v. Central Bank of Nigeria,
   461 U.S. 480 (1983) ............................................................................................... 8

World Wide Minerals, Ltd. v. Republic of Kazakhstan,
   296 F.3d 1154 (D.C. Cir. 2002) ........................................................................ 9-10

## STATUTES

28 U.S.C. § 1330(a) ................................................................................................ 1, 12

28 U.S.C. § 1330(b) ................................................................................................ 1, 13

28 U.S.C. § 1604 ......................................................................................................... 8

28 U.S.C. § 1605 ............................................................................................... 9-10, 13

28 U.S.C. § 1608.................................................................................13-15 & n.3, 16 n.4

9 U.S.C. § 206................................................................................................... 11

**RULES AND REGULATIONS**

22 C.F.R. § 93.2................................................................................................. 16 n.4

Fed. R. Civ. P. 12(b)(1), (2)................................................................................. 1

Joseph J. Saltarelli
HUNTON & WILLIAMS LLP
200 Park Avenue
New York, New York  10166
(212) 309-1000

*Attorneys for Defendant,*
*The Government of the*
*United Republic of Tanzania*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                          :

INDEPENDENT POWER TANZANIA LTD.,    :

                 Plaintiff,          :

            - against -          :         07 CV 10366 (AKH)

THE GOVERNMENT OF THE REPUBLIC   :
OF TANZANIA,

                 Defendant.       :
-------------------------------------------------------------X

## MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS THE COMPLAINT

        Defendant The Government of the United Republic of Tanzania ("GOT"), by counsel,

respectfully submits this Memorandum of Law in support of its motion to dismiss the complaint

for lack of subject matter and personal jurisdiction.  Fed. R. Civ. P. 12(b)(1), (2); 28 U.S.C. §§

1330(a), (b).

### Preliminary Statement

        In commencing this action, Plaintiff Independent Power Tanzania Ltd. ("IPTL") has put

the proverbial cart before the horse.  IPTL asserts a single claim arising under GOT's Guarantee

of certain obligations of Tanzania's state-owned electric utility, the Tanzanian Electric Supply Company ("TANESCO"). But the extent of TANESCO's obligations under its own agreement with IPTL has not yet been determined, and IPTL, in its attempt to hurriedly obtain a judgment against GOT, has also failed to comply with a mandatory arbitration provision in the Guarantee. Even a cursory review of the Guarantee upon which IPTL bases its claim demonstrates that IPTL and GOT agreed to resolve all disputes under the Guarantee by final and binding arbitration in London, under the auspices of the International Centre for the Settlement of Investment Disputes ("ICSID").[1]

IPTL seeks to confuse these issues and bypass the parties' mandatory arbitration agreement by unilaterally applying the nomenclature "undisputed " to the sums sought under the Guarantee and thereafter alleging that the action has been properly commenced because the sums are "undisputed." The real underlying issue is whether the amounts sought under the Guarantee are amounts that TANESCO is obligated to pay to IPTL and whether there has been any failure by TANESCO to pay such amounts. TANESCO has a right under its Power Purchase Agreement ("PPA") with IPTL, and also a statutory right under the laws of Tanzania, which govern the PPA, to set off amounts erroneously collected by IPTL in the past against amounts currently owed to IPTL, including the amounts IPTL describes as "undisputed." Thus, the precise sum which TANESCO may owe to IPTL, and which in turn is guaranteed by GOT, can only be quantified once TANESCO's contractual and legal rights are determined in accordance

---

[1] While the Guarantee does not require IPTL to first arbitrate against TANESCO before making a demand for payment from GOT, the Guarantee does provide that "Amounts in dispute under the Power Purchase Agreement shall be deemed not to be due and owing for purposes of this Guarantee until expiration of any dispute resolution procedures provided in each of the respective Agreements." See Guarantee, Article 1.5.1. "Disputes" are defined in the PPA as "any dispute or disagreement of any kind" and thus are not limited to matters or amounts disputed in an Invoice Dispute Notice under Article 6.8 of the PPA. Until the amounts due, if any, are finally determined through arbitration, nothing is due under the Guarantee.

with the dispute resolution procedures laid down in TANESCO's agreement with IPTL. Those procedures enjoin the parties to attempt amicable resolution of any dispute and, failing that, to elicit the intervention of an outside expert. If such efforts prove fruitless, IPTL and TANESCO are required to arbitrate their dispute. IPTL has chosen not to follow the agreed-upon procedure under its agreement with TANESCO or to comply with the provision in the Guarantee requiring arbitration of all disputes between IPTL and GOT, and by this lawsuit seeks to thwart a proper adjudication of the differences between the parties in accordance with their agreed-upon dispute resolution procedures.

This action, commenced in sheer disregard of IPTL's contractual obligation to arbitrate in London the very claim it seeks to litigate here, should be dismissed because the Court lacks both subject matter jurisdiction to hear the claim and personal jurisdiction over GOT.

First, under the Foreign Sovereign Immunities Act ("FSIA") the Court lacks subject matter jurisdiction to hear this dispute. IPTL's sole claim arises under GOT's Guarantee, which mandates that such a claim be arbitrated in London under ICSID auspices. IPTL's lawsuit does not seek entry of judgment on an arbitral award; indeed, an arbitral proceeding that might give rise to such an award has never been commenced. The Court lacks subject matter jurisdiction because GOT has not waived its sovereign immunity with respect to this plenary action, which seeks neither to compel arbitration under the Guarantee nor to reduce to judgment an arbitral award granted in favor of IPTL and based upon the Guarantee. Rather, IPTL has commenced its action in violation of the parties' explicit agreement to submit all disputes under the Guarantee to final and binding arbitration in London.

Second, IPTL has compounded its false start by failing to properly serve GOT. A party seeking to serve a foreign state must strictly comply with the service of process provisions in the

FSIA. As demonstrated below, this Court lacks personal jurisdiction over GOT because IPTL failed to comply with the FSIA's statutory requirements for service of process. Moreover, any attempt by IPTL to correct the deficiencies in its service would be futile since an assertion of personal jurisdiction over GOT could not withstand constitutional scrutiny due to GOT's lack of sufficient "minimum contacts" with the United States.

Finally, and in the alternative, assuming that subject matter and personal jurisdiction could be exercised and that IPTL's claim is not subject to binding arbitration in London despite the Guarantee's mandatory arbitration clause, the Court should nevertheless dismiss the action on the ground of *forum non conveniens*. The Guarantee in this case expresses the parties' clear intention that any litigation in connection with the Guarantee be brought, if at all, in the courts of London, England, a venue that is vastly more convenient for all parties to this dispute.

## Statement of Facts

### A.    Disputes Arising Under the Guarantee are Subject to Binding Arbitration.

This action involves a dispute between GOT and IPTL, a corporation organized under the laws of Tanzania with its principal place of business located in Dar es Salaam, Tanzania. The dispute concerns obligations arising from the operation of a power plant located in Tanzania.

More than a decade ago, IPTL entered into the PPA with TANESCO, dated 26 May 1995. Declaration of Sazi B. Salula, executed January 17, 2007 ("Salula Decl.") ¶ 3 & Ex. A. Pursuant to the PPA, IPTL constructed a 100 megawatt diesel-powered generating station in Tegeta, Dar es Salaam to produce electricity for TANESCO. *Id.*, ¶ 4. In conjunction with execution of the PPA, GOT entered into an Implementation Agreement ("IA"), dated 8 June 1995; the IA incorporated a Guarantee by GOT in respect of payments TANESCO was obligated to pay IPTL under the PPA. *Id.*, ¶ 3 and Ex. B, Article 22.

The PPA contains clauses providing for all disputes arising under the agreements to be resolved first by amicable discussions, to be followed by expert intervention, and then, failing such measures, by binding arbitration in London, England. The arbitration provision between IPTL and TANESCO is set out in Article 18.3 of the PPA..

The IA and Guarantee contain similar mandatory arbitration provisions. The arbitration provision between IPTL and GOT is set out in Article 21.2 of the IA, which provides that "any dispute or difference between the Parties arising out of or in connection with this Agreement (each a "Dispute" ) shall be settled by arbitration in accordance with the Rules of Procedure for Arbitration Proceedings (the "ICSID Rules") of the International Centre for the Settlement of Investment Disputes. . . ." The GOT Guarantee incorporates the IA's binding arbitration provision. Article 7.2 of the Guarantee provides: "Any dispute or difference between the Parties arising out of or in connection with this Agreement shall be arbitrated in accordance with Article 21.2 of the Implementation Agreement." Id., ¶¶ 6-7 & Ex. C.

IPTL has never commenced arbitration against GOT on its claim that amounts are due under the Guarantee. Indeed, IPTL has not complied with the terms of the PPA that oblige IPTL and TANESCO to attempt amicable resolution, expert intervention and, failing both, arbitration with respect to such a claim. IPTL has never commenced an arbitration against TANESCO for non-payment of capacity charges, either with respect to capacity charges IPTL admits are disputed, or with respect to those charges IPTL has described as "undisputed." Id., ¶ 9.

As noted in the Complaint, the power station at issue was the subject of an arbitration between IPTL and TANESCO commenced in 1999 and concluded in July 2001, about 6 months before the plant started commercial operations. Among other issues, TANESCO contended in the arbitration that IPTL had grossly inflated the price of the power station. GOT was not a party

to that arbitration, and GOT's Guarantee of TANESCO's payment obligations was not at issue in the arbitration. Id., ¶¶ 4-5.

When the final Award in the prior arbitration was issued, the power plant had not yet commenced commercial operations; IPTL was not generating power under the PPA; IPTL had not sent any invoices for capacity payments to TANESCO; and TANESCO had not incurred any payment obligations that were the subject of GOT's Guarantee. Id., ¶ 11. The prior arbitration addressed only pre-operational issues. By contrast, the dispute referenced in IPTL's Complaint relates to amounts invoiced to TANESCO long after the final Award in the prior arbitration. No disputes regarding those invoices were ever arbitrated; indeed, the disputes could not have arisen at that time. For instance, under the PPA and the law of Tanzania, which is the applicable law, TANESCO has the right to set off amounts that have been collected by IPTL in the past over and above its entitlement. The amounts, if any, that may ultimately be payable by TANESCO to IPTL (and which have been guaranteed by GOT) were not, and could not have been, adjudicated in the prior arbitration. Id., ¶¶ 9-10.

**B.      IPTL's Claims Have No Nexus To The United States.**

The commercial activity that gives rise to ITPL's claims has no nexus with the United States. IPTL is a Tanzanian company that entered into a contract with the state-owned utility of Tanzania to construct and operate in Tanzania a power plant that generates electricity consumed in Tanzania. The PPA, IA and Guarantee are each governed by the laws of Tanzania. IPTL's invoices to TANESCO for capacity and energy charges are prepared in Tanzania, and delivered to TANESCO in Tanzania. The PPA requires any payments by TANESCO to be made in Tanzania in Tanzanian shillings. The Guarantee requires that notices and demands to GOT be sent to GOT in Tanzania. IPTL has no right to demand any performance from GOT under the IA

- 6 -

or the Guarantee in New York or the United States. Id., ¶¶ 12-13. As set out in the IA, the Guarantee was not provided in the course of any commercial activity, but rather was issued for policy reasons as determined by GOT. Id., ¶ 12.

GOT does not have substantial contacts with the United States aside from its diplomatic functions with the United States government and international organizations such as the United Nations and World Bank. GOT maintains an Embassy in Washington, D.C. GOT's Ambassador to the United States and other diplomats are resident at this Embassy. Additionally, GOT has a Permanent Mission to the United Nations that is located in New York, New York. GOT's Ambassador and Permanent Representative to the United Nations and other diplomats are resident at the Mission. The Embassy in Washington and the Permanent Mission in New York directly support Tanzania's diplomatic relations with the United States and the United Nations. GOT's Embassy, Permanent Mission and diplomats have no involvement in the PPA, the IA, the Guarantee, or the performance of any obligations arising under those agreements. Id., ¶¶ 14-15.

GOT maintains bank accounts in Washington, DC. and New York for the purpose of supporting the functions of its Embassy and Permanent Mission, including paying the salaries of Tanzanian diplomats. GOT has not waived sovereign immunity with respect to such assets, which are protected by diplomatic and consular privileges under the State Immunity Act of England and the FSIA or any analogous legislation. Such accounts are defined as "Protected Assets" in the IA and Guarantee and are immune from attachment, execution or other act of seizure to satisfy the obligations arising under the Guarantee and/or the IA. Id., ¶¶ 16-17.

The real estate owned in the United States by GOT is used for housing the Tanzanian Ambassador to the United States in Washington, D.C., the Tanzanian Ambassador and Permanent Representative to the Permanent Mission to the United Nations in New York, and

other senior diplomats of the Embassy and Permanent Mission.  GOT does not own any property

in the United States used for a business, including any business related to IPTL, TANESCO, or

the power plant.  Id., ¶ 18.

## Argument

## POINT I

## IPTL'S ACTION SHOULD BE DISMISSED BECAUSE
## THE COURT LACKS SUBJECT MATTER JURISDICTION

Under the FSIA, a foreign state is "presumptively immune from the jurisdiction of United

States courts; unless a specified exception [set forth in the FSIA] applies, a federal court lacks

subject-matter jurisdiction over a claim against a foreign state."  Saudi Arabia v. Nelson, 507

U.S. 349, 355 (1993); see 28 U.S.C. § 1604 ("a foreign state shall be immune from the

jurisdiction of the courts of the United States and of the States except as provided in sections

1605 to 1607 of this chapter").

In FSIA cases, both subject matter and personal jurisdiction depend upon application of

the substantive provisions of the act.  Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480,

485 (1983).  Under 28 U.S.C. § 1330(a), a district court has subject matter jurisdiction over the

dispute if the foreign state is "not entitled to immunity either under sections 1605-1607 [of the

FSIA] or under any applicable international agreement," and under 28 U.S.C. § 1330(b), the

court has personal jurisdiction over the foreign state wherever subject matter jurisdiction exists

under 28 U.S.C. § 1330(a) and service of process has been made in accordance with 28 U.S.C.

§ 1608.  The FSIA "makes the statutory aspect of personal jurisdiction simple: subject matter

jurisdiction plus service of process equals personal jurisdiction."  Texas Trading & Milling Corp.

v. Federal Republic of Nigeria, 647 F.2d 300, 308 (2d Cir. 1981), cert. denied, 454 U.S. 1148

(1982).

In alleging that subject matter jurisdiction exists to hear its claim against GOT under the Guarantee, IPTL relies exclusively upon the exception set forth at 28 U.S.C. § 1605(a)(1); IPTL contends that GOT waived its sovereign immunity from this suit.  Complaint ¶ 7.  IPTL cites ¶ 2.6 of the Guarantee, wherein GOT agreed that it was "subject to suit in [] England with respect to its obligations" under the Guarantee, and waived its immunity with respect to proceedings brought "in any jurisdiction in connection with this Guarantee."  Section 2.6 expressly preserves GOT's immunity from suit with respect to "Protected Assets" not subject to execution or attachment under the FSIA.

Because of the Guarantee's mandatory arbitration provision, ¶ 2.6 does not amount to a waiver of GOT's sovereign immunity from this plenary action.  In effect, IPTL is contending that, by waiving sovereign immunity generally in connection with efforts to enforce an arbitral award based on the Guarantee, GOT has waived its contractual right to arbitrate claims arising under the Guarantee.  Such an interpretation would violate a "cardinal principle of contract construction:  that a document should be read to give effect to all its provisions and to render them consistent with each other."[2] Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 63 (1995); see Crimmins Contracting Co. v. City of New York, 74 N.Y.2d 166, 172-73, 544 N.Y.S.2d 580, 583-84, 542 N.E.2d 1097, 1100 (1989).  It would also violate the maxim that waivers of sovereign immunity are always "narrowly construed in favor of the sovereign and are not enlarged beyond what the language requires."  World Wide Minerals, Ltd. v. Republic of

---

[2] Because the Guarantee is an exhibit to the IA and its provisions are drawn from the IA, it should also be read consistently with that document.  It is abundantly clear from the IA that the consent to jurisdiction and waiver of sovereign immunity provisions are for purposes of enforcing a judgment based on an arbitral award, not for purposes of consenting to a plenary action, since such disputes had been consigned to binding and mandatory arbitration before ICSID.  See Salula Decl. Ex. 2, Articles 21.2, 24.7 and 24.9.

Kazakhstan, 296 F.3d 1154, 1162 (D.C. Cir. 2002) (citation and internal quotation marks omitted).

Thus, while the waiver of sovereign immunity in ¶ 2.6 might provide a basis for subject matter jurisdiction pursuant to 28 U.S.C. § 1605(a)(1) in an action seeking to reduce to judgment (or otherwise enforce) an arbitral award issued against GOT, that is not the case here.  In this action, IPTL seeks a plenary judgment against GOT based upon a common law claim for breach of the Guarantee.  IPTL has no right to assert such a claim in this Court given its obligation to arbitrate any claim arising under the Guarantee, something IPTL has not done.

IPTL's claim on the Guarantee is subject to mandatory and binding arbitration.  Section 7.2 of the Guarantee specifies that "[a]ny dispute or difference between the Parties arising out of or in connection with this Agreement shall be arbitrated in accordance with Article 21.2 of the Implementation Agreement."  The parties' agreement to binding arbitration is unambiguous, and should be enforced according to its terms.

Cognizant of the Guarantee's mandatory arbitration provision, IPTL attempts to sidestep the issue by claiming the provision is inapplicable:

> While the Guarantee contains an arbitration clause calling for the arbitration of any disputes under the Guarantee, this action does not concern any disputes under the Guarantee.  Rather, all such disputes have already been arbitrated in the ICSID Arbitration with TANESCO.  This action is solely to collect sums that are indisputably due pursuant to the Guarantee as already held in the ICSID Arbitration Award.  Specifically, this action is only to collect those sums that TANESCO has not disputed are due under the PPA, and hence are presently due under the Guarantee.  Accordingly, this suit is not subject to the arbitration clause in the Guarantee.

Complaint ¶ 13.

With the exception of IPTL's recognition of the existence of the arbitration clause, paragraph 13 of IPTL's Complaint is incorrect in every respect.

This action asserts a single claim arising under the Guarantee. IPTL's Complaint alleges that the dispute pertains to TANESCO's failure to make required monthly payments under the PPA. See Complaint at ¶¶ 22, 28, 29. The Complaint also alleges that GOT is obligated under the terms of its Guarantee to cover the payments due from TANESCO. See Complaint at ¶¶ 21, 30, 34-37. The Complaint states no ground other than the Guarantee as justification for IPTL's suit. Thus, IPTL's assertion that "this action does not concern any disputes under the Guarantee" is sophistry. The whole point of the lawsuit is to assert a claim against and recover money from GOT under the Guarantee, which claim is subject to mandatory arbitration by the very terms of the Guarantee. IPTL can only obtain a judgment against GOT by winning an arbitration award against GOT and later reducing the award to judgment in a court of competent jurisdiction. This action, therefore, must be dismissed as IPTL is required to pursue its claim under the Guarantee, if at all, through arbitration in London. See Chevron U.S.A. Inc., By and Through Chevron Resources Co. v. Consolidated Edison Co. of New York, Inc., 872 F.2d 534, 537 (2nd Cir. 1989) ("The district court should compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."); 9 U.S.C. § 206 ("A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States"); Rubin v. Sona Int'l Corp., 457 F. Supp. 2d 191, 198 (S.D.N.Y. 2006) ("Where all issues raised in the complaint must be submitted to arbitration, the court may dismiss the action rather than stay proceedings"); Eaton Vance Mgmt. v. ForstmannLeff Assocs.,

LLC, 2006 U.S. Dist. LEXIS 55741 at *15 (S.D.N.Y. 2006) ("This Court retains the jurisdiction to order dismissal rather than a stay").

Contrary to IPTL's allegations, the dispute between it and GOT was not resolved in the prior ICSID arbitration between IPTL and TANESCO.  The prior arbitration was between TANESCO and IPTL only, and concluded in 2001.  At the time of the arbitration, the power plant had not yet commenced commercial operation, no power had been generated, no capacity payments had been invoiced, and IPTL had not made any demands to GOT under the Guarantee. The final ICSID Award in July 2001 could not have resolved a dispute arising from invoices and dispute notices generated in 2007, and demands under the Guarantee first made in mid-2007, which invoices and demands give rise to IPTL's claim against GOT under the Guarantee.

Finally, IPTL's reliance on TANESCO's alleged failure to properly dispute invoices (which charge has not been validated through arbitration even against TANESCO) is irrelevant because IPTL has sued GOT, not TANESCO.  GOT not only has the right to raise any defense available to TANESCO, but also any defense available under the Guarantee.  And GOT has the right to assert such defenses in the arbitration proceeding mandated under the Guarantee.  It is not enough for IPTL to imply that GOT could not successfully defend an arbitration involving the Guarantee because TANESCO has not disputed the sums reflected in IPTL's invoices.  If IPTL wishes to assert a claim against GOT for non-payment under its Guarantee, it must arbitrate that claim and, if successful, reduce an award to judgment.  IPTL has no right under the parties' agreement or the FSIA to circumvent this contractually-mandated process solely because it wants to get its money faster.

In sum, this suit asserts a common law claim of breach of contract in derogation of the parties' agreement to submit such a claim to mandatory and binding arbitration in London.  GOT

- 12 -

has not waived its sovereign immunity with respect to such a suit and the Court therefore lacks

subject matter jurisdiction to hear it.

## POINT II

### IPTL'S ACTION SHOULD BE DISMISSED BECAUSE THE COURT LACKS PERSONAL JURISDICTION OVER GOT

The FSIA is the sole basis for obtaining personal jurisdiction over a foreign sovereign.

See Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434 (1989).  As noted

above, subject matter jurisdiction over a dispute involving a foreign sovereign depends upon the

applicability of one of the defined FSIA exceptions to sovereign immunity in 28 U.S.C. §1605.

See id. at 435.  Personal jurisdiction over the foreign sovereign depends upon the applicability of

one of the FSIA's exceptions to sovereign immunity, i.e., subject matter jurisdiction, as well as

service of process having been effected in strict compliance with 28 U.S.C. § 1608.[3]

For the reasons above, the Court lacks personal jurisdiction over GOT because IPTL

cannot demonstrate the existence of one of the statutory exceptions to sovereign immunity, i.e.,

subject matter jurisdiction.  28 U.S.C. § 1330(b).  The Court also lacks personal jurisdiction over

GOT because IPTL failed to properly serve GOT in accordance with the requirements of the

FSIA and any exercise of jurisdiction would be improper due to the lack of constitutionally

sufficient minimum contacts between GOT and the United States.

### A.    The Court Lacks Personal Jurisdiction Over GOT Because IPTL Failed to Properly Serve GOT in Strict Compliance with the FSIA.

IPTL's service of process upon GOT was defective because it did not strictly comply

with the requirements of 28 U.S.C. § 1608(a).  Section 1608(a) controls service of process upon

---

[3] Section 1608(a) governs service of process upon a foreign state, and is therefore the applicable provision in this case.  Section 1608(b) governs service of process upon agencies or instrumentalities of foreign states.

a foreign state or a political subdivision of a foreign state and provides that service may only be

made on a foreign state by one of four methods. It states:

> Service in the courts of the United States and of the States shall be
> made upon a foreign state:
>
> (1) by delivery of a copy of the summons and complaint in
> accordance with any special arrangement for service between the
> plaintiff and the foreign state or political subdivision; or
>
> (2) if no special arrangement exists, by delivery of a copy of the
> summons and complaint in accordance with an applicable
> international convention on service of judicial documents; or
>
> (3) if service cannot be made under paragraphs (1) or (2), by
> sending a copy of the summons and complaint and a notice of suit,
> together with a translation of each into the official language of the
> foreign state, by any form of mail requiring a signed receipt, to be
> addressed and dispatched by the clerk of the court to the head of
> the ministry of foreign affairs of the foreign state concerned, or
>
> (4) if service cannot be made within 30 days under paragraph (3),
> by sending two copies of the summons and complaint and a notice
> of suit, together with a translation of each into the official language
> of the foreign state, by any form of mail requiring a signed receipt,
> to be addressed and dispatched by the clerk of the court to the
> Secretary of State in Washington, District of Columbia, to the
> attention of the Director of Special Consular Services - and the
> Secretary shall transmit one copy of the papers through diplomatic
> channels to the foreign state and shall send to the clerk of the court
> a certified copy of the diplomatic note indicating when the papers
> were transmitted.
>
> As used in this subsection, a "notice of suit" shall mean a notice
> addressed to a foreign state and in a form prescribed by the
> Secretary of State by regulation.

28 U.S.C. § 1608(a) (emphases added).

Service of process upon a foreign state must strictly comply with the requirements of §

1608(a). "The absence of a reference to actual notice in § 1608(a), and Congressional caution

that the statute's procedures constitute the exclusive methods of service, mandate strict

- 14 -

adherence to its terms, not merely substantial compliance."   Finamar Investors, Inc. v. Republic of Tajikistan, 889 F. Supp. 114, 117 (S.D.N.Y. 1995).

In Magnus Electronics, Inc. v. Royal Bank of Canada, 620 F.Supp. 387 (N.D. Ill. 1985), for example, the plaintiff arranged for personal delivery of the service documents directly to the Argentine Foreign Ministry by a notary, rather than by mail as specified in § 1608(a)(3).  The court held that this deviation from the literal requirements of § 1608(a)(3) rendered the attempted service ineffective: "That noncompliance with the Act's literal requirements (though it certainly did provide notice) deprives this Court of personal jurisdiction."  Id. at 389.  Actual notice to the defendant is irrelevant.  Finamar Investors, 889 F. Supp. at 118 ("Whether or not respondent received actual notice of the suit is irrelevant when strict compliance is required."); New Hampshire Ins. Co. v. Wellesley Capital Partners, Inc., 200 A.D.2d 143, 150, 612 N.Y.S.2d 407, 411 (1st Dep't 1994) (attempted service under FSIA improper; "it remains the law in this forum that compliance with statutory service requirements is not obviated by a defendant's actual receipt of service") .

IPTL's service in this case was controlled by § 1608(a)(3).  None of the contractual documents between IPTL and GOT provides for any special arrangement of service.  Further, GOT is not party to any international convention on service of judicial documents.  Therefore, IPTL was required to serve process upon GOT in accordance with the terms of § 1608(a)(3).  See Underwood v. United Republic of Tanzania, 1995 WL 46383 (D.D.C. 1995) ("As Tanzania is not a signatory to an international convention on service of process, the only relevant provision remaining is § 1608(a)(3)").  IPTL failed to meet the requirements set forth in § 1608(a)(3).

Section 1608(a)(3) requires that the appropriate documents be addressed and dispatched by the clerk of the court, in a form of mail requiring a signed receipt, to the head of the ministry

- 15 -

of foreign affairs of the foreign state.  In this case, IPTL simply ignored these requirements and

hand-delivered to GOT's Embassy in Washington, D.C., a single copy (not two copies as

required) of the Summons and Complaint (and related court papers) in an envelope with a label

indicating it was from the Washington, D.C. office of its counsel, Nixon Peabody LLP.

Declaration of Joseph E. Sokoine, executed January 17, 2008 ("Sokoine Decl.") ¶ 2 & Exs. 1-2.

The envelope did not have a stamp, post-mark or any indication that it had been sent via

any form of U.S. mail, let alone one requiring a return receipt.  Id., ¶ 3 & Ex. 1.  Furthermore, the

documents delivered to the Embassy of Tanzania did not include a notice of suit, as required by §

1608(a)(3).[4]  Finally, IPTL delivered the documents to GOT's Embassy, rather than to the head

_____

[4] Section 1608(a)(3) requires that a notice of suit comply with 22 C.F.R. § 93.2, which
states that a party creating the notice "shall in every instance supply the information specified in
items 1 through 5 of the form appearing in the Annex to this section."  The Annex requires that
the notice of suit contain the following:

> 1. Title of legal proceeding; full name of court; case or docket
> number.
> 2. Name of foreign state (or political subdivision) concerned:
> 3. Identity of the other Parties: . . .
> 4. Nature of documents served (e.g., Summons and Complaint;
> Default Judgment):
> 5. Nature and purpose of the proceedings; why the foreign state (or
> political subdivision) has been named; relief requested:
> 6. Date of default judgment (if any):
> 7. A response to a "Summons" and "Complaint" is required to be
> submitted to the court, not later than 60 days after these documents
> are received. The response may present jurisdictional defenses
> (including defenses relating to state immunity).
> 8. The failure to submit a timely response with the court can result
> in a Default Judgment and a request for execution to satisfy the
> judgment. If a default judgment has been entered, a procedure may
> be available to vacate or open that judgment.

22 C.F.R. § 93.2(c) states: "In supplying the information specified in item 5, a party shall in
simplified language summarize the nature and purpose of the proceeding (including principal
allegations and claimed bases of liability), the reasons why the foreign state or political
subdivision has been named as a party in the proceeding, and the nature and amount of

of Tanzania's Ministry of Foreign Affairs.  Sokoine Decl. ¶ 2 & Ex. 1.  GOT has confirmed that

the pleadings and requisite notices were not delivered by the clerk of the court or IPTL, by mail

or otherwise, to its Ministry of Foreign Affairs in Tanzania.  Salula Decl. ¶ 2.

 Courts have consistently found that the requirements of § 1608(a)(3) are not satisfied by

delivery of the summons to an embassy.  See Lewis & Kennedy, Inc. v. Permanent Mission of

the Republic of Botswana to the United Nations, 2005 WL 1621342, at *4 (S.D.N.Y. 2005)

("The statute is clear that a foreign ambassador to the United States or United Nations cannot be

construed as the Minister of Foreign Affairs"); see also Autotech Technologies v. Integral

Research & Development Corp., 499 F.3d 737, 748 (7th Cir. 2007) ("service through an embassy

is expressly banned . . . by U.S. statutory law"); Transaero, Inc. v La Fuerza Aerea Boliviana, 30

F.3d 148,153 (D.C. Cir. 1994) ("serv[ing] the Bolivian Ambassador and Consul General in

Washington, and the Bolivian First Minister and the Bolivian Air Force in La Paz – but never the

Ministry of Foreign Affairs or the Secretary of State" was not sufficient to effect service);

Alberti v. Empresa Nicaraguense de la Carne, 705 F.2d 250, 253 (7th Cir. 1983) (holding that

legislative history of FSIA makes clear that the Ambassador of Nicaragua cannot be construed as

the head of the ministry of foreign affairs); Ellenbogen v. The Canadian Embassy, 2005 WL

3211428, 2 (D.D.C. 2005) ("Service of process upon an embassy of a foreign state . . . does not

meet the requirements set forth in § 1608(a)(3)").

 Because IPTL did not comply with the most basic requirements set forth at 28 U.S.C.

§ 1608(a)(3), no less comply strictly with them, it failed to properly serve GOT and, for that

reason, the Court lacks personal jurisdiction over GOT.

---

relief sought."  IPTL completely failed to comply with these requirements.

**B.    The Court Also Lacks Personal Jurisdiction Over GOT Because Tanzania
        Does Not Have Constitutionally Sufficient Minimum Contacts with the U.S.**

Even if IPTL had effected proper service of its pleadings upon GOT, and it did not, the

Court's exercise of personal jurisdiction over GOT would still be improper because GOT lacks

sufficient "minimum contacts" with the United States to satisfy constitutional due process

requirements.

The Second Circuit recognizes that "the [FSIA] cannot create personal jurisdiction where

the Constitution forbids it." Texas Trading & Milling Corp., 647 F.2d at 308.  "Accordingly,

each finding of personal jurisdiction under the FSIA [based upon the existence of subject matter

jurisdiction and proper service of process] requires, in addition, a due process scrutiny of the

court's power to exercise its authority over a particular defendant." Id.; see U.S. Titan, Inc. v.

Guangzhou Zhen Hua Shipping Co., Ltd., 241 F.3d 135, 152 (2d Cir. 2001) ("the exercise of

personal jurisdiction under the FSIA must also comport with the Due Process Clause"); Frontera

Resources Azerbaijan Corp. v. State Oil Co. of the Azerbaijan Republic, 479 F. Supp. 2d 376,

385 (S.D.N.Y. 2007) (same).

The court must "examine the extent to which defendants availed themselves of the

privileges of American law, the extent to which litigation in the United States would be

foreseeable to them, the inconvenience to defendants of litigating in the United States, and the

countervailing interest of the United States in hearing the suit." Texas Trading & Milling Corp.,

647 F.2d at 314.

GOT's contacts with the United States[5] do not meet the criteria articulated by the court in

Texas Trading.  GOT's sole contacts with the United States are for diplomatic purposes.  GOT

_____

        [5] Because IPTL was required to serve GOT under a federal service of process provision,
the Court examines as part of its due process analysis GOT's contacts with the United States as a

maintains an Embassy in Washington, D.C. in which its Ambassador to the United States and other diplomats reside. Additionally, GOT maintains a Permanent Mission to the United Nations in New York City. GOT's Ambassador and Permanent Representative to the United Nations, and other diplomats, are resident at the UN Mission. The Embassy in Washington and the UN Mission in New York directly support GOT's governmental functions, including maintenance of diplomatic relations with the United States and membership in the United Nations. Members of GOT's diplomatic missions have no involvement in the PPA, the IA, the Guarantee, or the performance of any obligations arising under those agreements. Salula Decl. ¶¶ 12-14.

The real estate owned by GOT in the United States is used for housing its Ambassador to the United States, resident in Washington, D.C., its Ambassador and Permanent Representative to GOT's UN Mission, in New York, and other senior diplomats of the Embassy and Permanent Mission. GOT does not own any property in the United States used for commercial purposes, including any business related to IPTL, TANESCO, or the power plant. Salula Decl. ¶ 18.

While GOT maintains bank accounts in Washington, DC and New York, they are used for the purpose of supporting the functions of its Embassy and Permanent Mission, including paying the salaries of Tanzanian diplomats. Further, though GOT has requested and accepted loans from the World Bank, such loans are made available exclusively to sovereign nations and are not available to private individuals. GOT has not waived sovereign immunity for any assets that are protected by diplomatic and consular privileges under the FSIA. Salula Decl. ¶¶ 16-17.

GOT does not conduct commercial activities in the United States, has not availed itself of the privileges of U.S. law, and could not reasonably have foreseen being hailed into court in the United States with respect to its purported obligations under the Guarantee, certainly not prior to

---

whole and not just the forum state. U.S. Titan, Inc., 241 F.3d 152 n.12; Chew v. Dietrich, 143 F.3d 24, 27-28 (2d Cir. 1998).

IPTL's commencing an arbitration proceeding and, if successful, obtaining an arbitral award and seeking to reduce the award to judgment in a United States court.

Moreover, litigation of this dispute would be very inconvenient for GOT due to the logistical problems of preparing for litigation in a forum that requires nearly two days' travel time for its representatives and witnesses.

Lastly, the United States has no interest in adjudicating this dispute. It involves GOT's guarantee of the obligations of TANESCO, Tanzania's government-owned utility, which in turn owns a power plant in Tanzania generating electricity for consumption exclusively in Tanzania. IPTL itself is a Tanzanian company.

This case is strikingly similar to Shen v. Japan Airlines, 918 F. Supp. 686 (S.D.N.Y. 1994). In Shen, the defendant, determined to be a political subdivision of the Japanese government, demonstrated that it "conduct[ed] no commercial activities at all in the United States[,] . . . maintain[ed] no offices outside of Japan, and [that] none of its officials or employees conduct[ed] any commercial activities within the United States." Id. at 692. Based on such a showing, which closely parallels the one made here by GOT, the Court determined that the defendant "[did] not have sufficient minimum contacts with the United States to permit this court to exercise jurisdiction over it." For the same reasons, GOT lacks sufficient minimum contacts with the United States to allow this Court to exercise personal jurisdiction over it.[6]

_____

[6] Even if IPTL were seeking in this action to obtain judgment upon an arbitral award, GOT's lack of minimum contacts would still prevent the Court from exercising personal jurisdiction in a constitutionally permissible manner. In Frontera Resources Azerbaijan, the Court addressed whether the "minimum contacts" analysis applies in the context of a petition to enforce an arbitral award. In concluding that it does, the Court noted that while the "Second Circuit [had] . . . not resolved the issue . . . [o]ther courts . . . have answered this question in the affirmative," referring to decisions in the Third, Fourth and Ninth Circuits as well as in prior decisions from the Southern District. 479 F. Supp. 2d at 380-81.

In an apparent effort to demonstrate the sufficiency of GOT's contacts with this country, IPTL alleges that GOT and TANESCO "conduct extensive financial transactions with the World Bank, in Washington DC." See Complaint ¶ 6. But in order to constitute "minimum contacts" for due process purposes, a foreign sovereign must have constitutionally sufficient commercial contacts with the forum. GOT has no such contacts. If diplomatic contacts alone could be evaluated for due process purposes, no foreign state maintaining permanent foreign embassies, consulates and UN missions in this country would be immune from suit here.

An activity is commercial if it is "of the type an individual would customarily carry on for profit." Letelier v. Republic of Chile, 748 F.2d 790, 797 (2nd Cir. 1984). GOT carries on no such activities within the borders of the United States. While the World Bank provides "low or no interest loans and grants to countries that have unfavorable or no access to international credit markets," see World Bank Website, About Us, http://www.worldbank.org, its loans are only available to foreign governments acting in a sovereign, governmental capacity. It is indisputable that an individual cannot apply for and receive a World Bank loan. Thus, any dealings GOT has with the World Bank are strictly governmental in nature, and not of the type an individual would "customarily carry on for profit." Id. IPTL's reliance upon GOT's contacts with the World Bank is unavailing.

**[Remainder of Page Intentionally Left Blank]**

- 21 -

## III.   IN THE ALTERNATIVE, THE COURT SHOULD DISMISS THE ACTION ON THE GROUND OF *FORUM NON CONVENIENS*

Even if this Court were to conclude that it possesses subject matter and personal jurisdiction and does not dismiss the action based upon the Guarantee's mandatory arbitration clause, it should nevertheless dismiss on the ground of *forum non conveniens*. In ¶ 1.9 of the Guarantee, the parties explicitly agreed that any litigation involving enforcement of an arbitral award under the Guarantee should be conducted in the courts of London, England; the same clause makes no mention of the courts of the United States. Indeed, ¶ 1.9 contains detailed provisions regarding service of process in such a proceedings, clearly expressing the parties' intent that any judicial proceeding to enforce an award under the Guarantee would be conducted in London.

Further, it would be inconvenient for the GOT to litigate in the United States and the activity that gives rise to IPTL's claim has absolutely no nexus with the United States, since it involves GOT's guarantee of TANESCO's performance of obligations under the PPA which, in turn, pertains to the operation of a power plant in Tanzania generating electricity consumed exclusively in Tanzania. For that reason, a court of the United States is not an appropriate or even logical forum to resolve the parties' dispute.

The "degree of deference given to a plaintiff's forum choice varies with the circumstances." Iragorri v. United Technologies Corp., 274 F.3d 65, 71 (2nd Cir. 2001). "When the plaintiff is foreign, . . . [the] assumption [favoring the plaintiff's choice of forum] is much less reasonable." Id. at 71 (internal quotations removed) (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 (1981)). Even if a foreign plaintiff is not "forum-shopping," "there is still no reason to assume a U.S. forum is convenient for a foreign plaintiff's suit." Pollux Holding, Ltd. v. The Chase Manhattan Bank, 329 F.3d 64, 71 (2nd Cir. 2003).

The Second Circuit has identified factors relevant to a determination of whether a plaintiff's choice of forum is motivated by genuine convenience. These factors are "[1] the convenience of the plaintiff's residence in relation to the chosen forum, [2] the availability of witnesses or evidence to the forum district, [3] the defendant's amenability to suit in the forum district, [4] the availability of appropriate legal assistance, and [5] other reason relating to convenience or expense." Norex Petroleum Ltd. v. Access Industries, Inc., 416 F.3d 146, 155 (2nd Cir. 2005).

Once a level of deference to the plaintiff's choice of forum is determined, "a district court must next determine whether an adequate alternative forum exists and, if so, then balance private and public interest factors to ascertain whether the case should be adjudicated in plaintiff's chosen forum or in the alternative forum proposed by defendant." Pollux, 329 F.3d at 74-75. An alternate forum "is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." Id. When determining whether the case should be adjudicated in the alternative forum, the Second Circuit considers both private and public interest factors. The private interest factors are "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of unwilling, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." Iragorri, 274 F.3d at 73-74. Public factors include "administrative difficulties . . . when litigation is piled up in congested centers instead of being handled at its origin," an "interest in having localized controversies decided at home," and the appropriateness in having a trial at home "rather than having a court in some other forum untangle problems . . . in law foreign to itself." Id. at 74.

The application of the Second Circuit's *forum non conveniens* standards demonstrates that England is the more appropriate forum for this dispute. IPTL is a foreign plaintiff and therefore its choice of a forum should receive less deference than a domestic plaintiff.

Additionally, an adequate forum exists in the courts of London, England. The parties have already contracted to arbitrate all disputes there and explicitly consented to the jurisdiction of England's courts for any enforcement action pertaining to an award or arbitral decision. See Guarantee §§ 1.9, 7.2. Finally, § 21.1 of the IA specifies that English law governs the procedure and administration of any arbitration (and the Guarantee adopts the arbitration requirements of the IA). Therefore, GOT is amenable to suit in England, and IPTL could pursue any available remedies against GOT in that country.

Finally, the cost and length of travel for a trip to England from Tanzania is significantly less than that of a trip to New York. Though neither this court nor a London court can claim an overwhelming public interest in deciding a purely Tanzanian dispute, the clearly expressed preference of the parties was that litigation connected to the Guarantee be conducted in England, as stated in both the IA and the Guarantee. The parties' choice of London, England as the forum for litigation connected with the Guarantee, while concededly non-exclusive, suggests that the courts of England would possess a greater interest in adjudicating this dispute than the courts of the United States.

**[Remainder of Page Intentionally Left Blank]**

## Conclusion

GOT has not waived sovereign immunity with respect to a plenary action such as this which seeks a money judgment in contravention of the parties' agreement to arbitrate disputes under the Guarantee. For that reason, the Court lacks subject matter jurisdiction to hear IPTL's claim and, for the same reason, lacks personal jurisdiction over GOT.

The Court also lacks personal jurisdiction because IPTL failed to effect service of process in strict compliance with the FSIA, and because GOT lacks constitutionally sufficient minimum contacts with the United States. Finally, even if the Court concludes that it may exercise subject matter and personal jurisdiction under the FSIA, it nevertheless should dismiss the action on the ground of *forum non conveniens* and in furtherance of the parties' agreement that any litigation in connection with the Guarantee would be conducted in the courts of England.

Dated: New York, New York
       January 22, 2008

Respectfully Submitted,

HUNTON & WILLIAMS LLP

By: _____
       Joseph J. Saltarelli
       200 Park Avenue
       New York, New York  10166
       (212) 309-1000

                    - and -

       John Jay Range
       (to be admitted *pro hac vice*)
       1900 K Street, N.W.
       Washington, D.C.  20006
       (202) 955-1500

       *Attorneys for Defendant,*
       *The Government of the*
       *United Republic of Tanzania*

- 25 -

## DECLARATION OF SERVICE

Bradford C. Mulder, hereby declares under penalty of perjury pursuant to 28 U.S.C. § 1746.

I am Managing Clerk at the law firm of Hunton & Williams LLP, attorneys for Defendant The Government of the United Republic of Tanzania.

That on January 22, 2008, I served a true copy of the attached Memorandum of Law in Support of Defendant's Motion to Dismiss, on Plaintiff's counsel at the address listed below, by depositing the same in a duly enclosed and sealed wrapper, for Federal Express Next Day Overnight Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  January 22, 2008.

Bradford C. Mulder

TO:    Robert C. Sentner, Esq.
       NIXON PEABODY LLP
       437 Madison Avenue
       New York, New York  10022

       *Attorneys for Plaintiff*