UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
INDEPENDENT POWER TANZANIA LTD.,                             :
                                                             :
                              Plaintiff,                     :
                                                             :
              - against -                                    :         07 CV 10366 (AKH)
                                                             :
THE GOVERNMENT OF THE REPUBLIC                               :
OF TANZANIA,                                                 :
                                                             :
                              Defendant.                     :
                                                             :
-------------------------------------------------------------X

## DECLARATION OF JOSEPH E. SOKOINE

Joseph E. Sokoine hereby deposes and states as follows pursuant to 28 U.S.C.§ 1746:

1.      I am employed by the United Republic of Tanzania at its embassy in Washington, D.C., which is located at 2139 R Street NW.  My title is Counsellor, Political, Information, Education and Tourism.

2.      On November 23, 2007, when I reported for work, an embassy employee handed me an oversized yellow envelope with a label indicating it was from the Washington, D.C. office of the law firm of Nixon Peabody LLP.  The envelope was addressed to the "Government of the Republic of Tanzania c/o Tanzanian Embassy," bearing the address of the Embassy of Tanzania at 2139 R Street NW in Washington, D.C.  A true copy of the envelope is attached to this declaration as Exhibit 1.

3.      The envelope did not have a postal stamp affixed to it and did not bear a post-mark or any other indication that it had been sent via any form of U.S. mail. It appeared to have been hand-delivered.  At the embassy, the receptionist receives all mail and deliveries.  My

investigation confirmed that the envelope was not received in the mail, but was hand-delivered to the embassy.

4.    The envelope contained a copy of the following documents:

- Plaintiff's Disclosure Statement Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure;

- Summons in a Civil Case;

- Complaint with attached Exhibit A;

- 3rd Amended Instructions for Filing an Electronic Case or Appeal;

- Individual Practices of Magistrate Judge Eaton;

- Appendix A to the Individual Practices of Magistrate Judge Eaton; and

- Individual Rules of the Honorable Alvin K. Hellerstein.

A true copy of each document included in the envelope is attached to this declaration as Exhibit 2. The envelope did not contain any other documents.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

_____
Joseph E. Sokoine

Date: January 17, 08

**<u>Exhibit 1 to Declaration of Joseph E. Sokoine</u>**

# NIXON PEABODY
ATTORNEYS AT LAW

401 9th Street, N.W., Suite 900 · Washington, DC 20004-2128

The Government of the Republic of Tanzania
c/o Tanzanian Embassy
2139 R Street, N.W.
Washington, D.C.  20008

return postage guaranteed

**Exhibit 2 to Declaration of Joseph E. Sokoine**

**Judge Hellerstein**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INDEPENDENT POWER TANZANIA LTD.,

Plaintiff,

vs.

THE GOVERNMENT OF THE REPUBLIC OF
TANZANIA,

Defendant.

**07 CV 10366**

__ CV ____



NOV 1 6 2007
U.S.D.C. S.D. N.Y
CASHIERS

### PLAINTIFF'S DISCLOSURE STATEMENT
### PURSUANT TO RULE 7.1

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure Plaintiff Independent Power Tanzania Ltd. ("IPTL"), by its counsel, Nixon Peabody LLP, affirms that IPTL is owned by Mechmar Corporation (Malaysia) Berhad and VIP Engineering. VIP Engineering is a privately held company in Tanzania. Mechmar Corporation is a Malaysian company, that is publicly traded on the Kuala Lumpur stock exchange..

Dated: New York, New York
       November 15, 2007

NIXON PEABODY LLP

Robert C. Sentner (RC 5223)
437 Madison Avenue
New York, NY 10021
(212) 940-3124

10806792.1

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

INDEPENDENT POWER TANZANIA LTD.,

                    Plaintiff,                          **SUMMONS IN A CIVIL CASE**

          v.

THE GOVERNMENT OF THE REPUBLIC OF TANZANIA,

                    Defendant.

CASE NUMBER:

# 07 CV 10366

## Judge Hellerstein

TO: (Name and address of Defendant)

The Government of the Republic of Tanzania
c/o Tanzanian Embassy
2139 R Street, NW
Washington, DC 20008

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Robert Sentner, Esquire
Nixon Peabody LLP
437 Madison Avenue
New York, NY 10022

an answer to the complaint which is served on you with this summons, within _20_ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON                          NOV 15 2007
CLERK                                                    DATE

(By) DEPUTY CLERK

10806736.1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# Judge Hellerstein

## COMPLAINT

INDEPENDENT POWER TANZANIA LTD.,

                               Plaintiff,

# 07  CV No. 10366

    vs.

THE GOVERNMENT OF THE REPUBLIC OF TANZANIA,

                                    Defendant.



RECEIVED
NOV 1 5 2007
U.S.D.C. S.D. N.Y.
CASHIERS

## INTRODUCTION

    1.    This action is brought on behalf of Independent Power Tanzania Ltd. ("IPTL"), which developed, financed, built, and operates, a privately financed 100 MW power plant in the Republic of Tanzania. The IPTL plant is the largest entirely private investment in Tanzania, and the first privately-financed power project in Sub-Saharan Africa (the "Power Plant").

    2.    IPTL's existence is presently in peril because the Government of the Republic of Tanzania has failed to honor its obligations under its unconditional guarantee of its wholly-owned utility -- Tanzania Electric Supply Company ("Tanesco") -- obligations under a Power Purchase Agreement. Tanesco's payment obligations that are relevant here were determined by an arbitration award that was rendered in an arbitration between Tanesco and IPTL concerning that Power Purchase Agreement.  The Government of Tanzania, by virtue of its guarantee of Tanesco's obligations, owes to IPTL the sum that Tanesco has failed to pay. IPTL has demanded payment pursuant to the terms of the Guarantee, but the Government of Tanzania has failed to make payment.

3.    The undisputed sum that the Government of Tanzania presently owes to IPTL is US$ 26,016,487.15.  IPTL seeks judgment in that amount.

## THE PARTIES

4.    Independent Power Tanzania Limited is a corporation organized under the laws of the Republic of Tanzania, with its principal place of business in Dar es Salaam, Tanzania.

5.    The Government of the United Republic of Tanzania ("GOT") is the national government of the Republic of Tanzania.

## JURISDICTION

6.    The GOT maintains an embassy in Washington DC, and a consulate within the City of New York.  Further, upon information and belief, the GOT maintains bank accounts within the United States, including, but not limited to, Bank of America accounts within New York (account number 994201GRF), and Washington D.C. (account 9953270001).  The GOT also owns real estate in Maryland and in New York City.  The GOT and TANESCO conduct extensive financial transactions with the World Bank, in Washington DC.

7.    The Court has jurisdiction over GOT pursuant to the Foreign Sovereign Immunities Act ("FSIA").  Under 28 U.S.C. § 1330(a), a district court has subject matter jurisdiction if a foreign state is "not entitled to immunity either under sections 1605-1607 . . . or under any applicable international agreement."  Pursuant to 28 U.S.C. § 1605(a)(1), an exception to foreign state immunity occurs when "the foreign state has waived its immunity either explicitly or by implication."  As discussed in Paragraph 12 below, GOT has explicitly waived its right of immunity.  Under 28 U.S.C. § 1330(b) this court has personal jurisdiction because subject matter jurisdiction exists under subsection (a) and service of process has been made under 28 U.S.C. § 1608.

10802958.4                                    2

## BACKGROUND - THE TANZANIA POWER PLANT PROJECT

8.    By Agreement with IPTL dated as of June 8, 1995, the Government of Tanzania stated, among other things, that

> Whereas,
>
> (1) The GOT as a matter of policy has decided to involve the private sector in the generation of electricity for sale to the national grid.
>
> (2) Consistent with the GOT's policy and guidelines, [IPTL] has proposed to design, insure, finance, acquire, construct, complete, own, operate and maintain an electric power plant (the "Facility") at Tegeta, Dar es Salaam, Tanzania, to supply electric power to Tanzania Electric Supply Company Limited (TANESCO).
>
> (3) Simultaneously herewith, [IPTL] is entering into a Power Purchase Agreement with TANESCO.
>
> (4) The GOT and [IPTL] are entering into this Agreement so that [IPTL's] proposal to build the Facility may be implemented in a manner that reflects the close cooperation between the public and private sectors in the generation of electricity for sale on the national grid.

9.    Accordingly, IPTL and Tanesco entered into a Power Purchase Agreement (the "PPA") with an effective date of 26 May 1995. Pursuant to the PPA, IPTL privately financed, developed, constructed, and operates, a nominal 100 MW power plant in Tanzania.

10.    Pursuant to the PPA, Tanesco is to pay IPTL, on a monthly basis, and for a term of twenty years, capacity payments, energy payments and supplemental payments.

## THE GOVERNMENT OF TANZANIA GUARANTEE OF PAYMENT

11.    By guarantee dated June 8, 1995, entered into between The Government of the United Republic of Tanzania (the "GOT"), on the one side, and IPTL on the other, the GOT

> irrevocably and unconditionally guarantee[d] and promise[d] to pay [IPTL] any and every sum of money TANESCO is obligated to pay to [IPTL] pursuant to the Power Purchase Agreement TANESCO has failed to pay in accordance with the terms of those agreements.

10802958.4

3

The obligations of the Guarantor under this Guarantee shall be absolute and unconditional and shall remain in full force and effect until all the covenants, terms, and agreements set forth in the Power Purchase Agreement, shall have been completely discharged and performed, unless waived by [IPTL] in writing.

12.    Further, the GOT has expressly represented that the Guarantee and the obligations it pertain to are commercial, not governmental, acts, and that it waives any immunity with respect to any of its assets, "other than its aircraft, naval vessels and other defense related assets or assets protected by the diplomatic and consular privileges under the State Immunity Act of England or the Foreign Sovereign Immunities Act of the United States or any analogous legislation (the "Protected Assets")":

The Guarantor irrevocably and unconditionally agrees that it is subject to suit in the England[1] with respect to its obligations hereunder, and that the execution, delivery, and performance of this Guarantee constitute private and commercial acts of the Guarantor. The GOT hereby irrevocably and unconditionally agrees: (i) that should any proceedings be brought against the GOT or its assets, other than its aircraft, naval vessels and other defense related assets or assets protected by the diplomatic and consular privileges under the State Immunity Act of England or the Foreign Sovereign Immunities Act of the United States or any analogous legislation (the "Protected Assets"), in any jurisdiction in connection with this Guarantee or any of the transactions contemplated by this Guaranty, no claim of immunity from such proceedings will be claimed by or on behalf of the GOT on behalf of itself or any of its assets (other than the Protected Assets); (ii) it waives any right of immunity which it or any of its assets (other than the Protected Assets) now has or may in the future have in any jurisdiction in connection with any such proceedings; and (iii) it consents generally in respect of the enforcement of any judgment against it in any such proceedings in any jurisdiction to the giving of any relief or the issue of any process in connection with such proceedings (including without limitation, the making, enforcement, or execution against or in respect of any of its assets whatsoever (other than the Protected Assets) regardless of the use or intended use of the asset.

A copy of the Guarantee is annexed as Exhibit A.

---

[1]    Non-exclusive jurisdiction.

13.    While the Guarantee contains an arbitration clause calling for the arbitration of any disputes under the Guarantee, this action does not concern any disputes under the Guarantee. Rather, all such disputes have already been arbitrated in the ICSID Arbitration with TANESCO. This action is solely to collect sums that are indisputably due pursuant to the Guarantee as already held in the ICSID Arbitration Award. Specifically, this action is only to collect those sums that Tanesco has not disputed are due under the PPA, and hence are presently due under the Guarantee. Accordingly, this suit is not subject to the arbitration clause in the Guarantee.

## THE ICSID ARBITRATION

14.    On 25 November 1998, after the Power Plant was constructed, Tanesco commenced the ICSID arbitration against IPTL. Tanesco sought generally to (1) terminate the Power Purchase Agreement between it and IPTL, and (2) failing termination, to reduce the tariff set forth in that Power Purchase Agreement.

15.    The Government of Tanzania was involved in the arbitration, and aware throughout of the proceedings and issues under deliberation.

## THE ICSID ARBITRATION AWARD

16.    As set forth above, IPTL and Tanesco conducted a lengthy arbitration with respect to disputes arising in connection with the PPA. Included among those disputes was their dispute about the amount of the monthly capacity payments under the PPA. After extensive hearings and the issuance of several preliminary awards, the Tribunal issued the final ICSID Award. By Final Award dated July 12, 2001, ICSID rendered an Award in the arbitration entitled *Tanzania Electric Supply Company Limited v. Independent Power Tanzania Limited* (ICSID Case No. ARB/98/8) (the "ICSID Award"). The full ICSID Award is published on the ICSID website.

17.    In that ICSID Award, the ICSID Tribunal ordered Tanesco to, among other things, comply with its obligations under the Power Purchase Agreement. The Power Purchase Agreement has a term of 20 years.

18.    Pursuant to the Power Purchase Agreement (and the ICSID Award), Tanesco is obligated to make monthly capacity, energy, supplemental and Penalty/Bonus payments to IPTL [PPA, p. 16-17]. In the event that Tanesco has some dispute about a portion of the payments, IPTL is still entitled to timely payment of the undisputed portion of the payments, while any dispute is resolved as to the disputed portion of the payments [PPA, p. 20-21].

19.    During the course of the arbitration, the parties agreed-upon a financial model that would determine the monthly capacity payments [Award, p. 25, ¶ 2B]. The financial model was made part and parcel of the ICSID Award [Award, p. 25, ¶ 2B].

20.    Accordingly, the ICSID Award requires Tanesco to pay to IPTL, on a monthly basis, capacity payments determined in accordance with the ICSID Financial Model.

21.    The Government of Tanzania, by virtue of its guarantee of TANESCO's payment obligations, is obligated to pay to IPTL sums that Tanesco is required to pay pursuant to the Power Purchase Agreement and ICSID Award, but does not do so.

## EVENTS SINCE THE CONCLUSION OF THE ICSID ARBITRATION

22.    For approximately five years, IPTL submitted capacity payment invoices to Tanesco that were all calculated based on the ICSID Financial Model. Tanesco's agent Dr. Martin Swales reviewed the invoices, and based on his certification that they were calculated in accordance with the ICSID Financial Model, Tanesco paid the invoices (albeit often very late).

However, beginning in January 2007, Tanesco stopped making payments[2], despite the fact that
(1) the invoices were calculated in accordance with the ICSID Financial Model in the same
manner as they had been for the previous five years, and (2) Dr. Martin Swales certified that the
calculations with respect to each and every invoice were performed correctly under the ICSID
Financial Model.  As indicated above, Dr. Swales was intimately involved in the ICSID
arbitration, and was deeply involved in the preparation of the financial model that is part of the
ICSID Award.

23.    Despite the fact that a great deal of the capacity payment invoices are undisputed
by Tanesco, and hence the undisputed sums are unquestionably due to IPTL, Tanesco and the
Government of Tanzania have refused to pay to IPTL even the undisputed portions, and have
prevented the Bank of Tanzania from releasing any funds from escrow to fulfill those payment
obligations.

24.    Presently, the total payments due to IPTL total  US$44,567,717.70 million, plus
overdue interest of US$1,442,788.30 through November 1, 2007.

25.    The amount of the undisputed payments alone is approximately
US$ 26,016,487.15 million, plus overdue interest of US$1,153,395.52, through November 1,
2007.

26.    In this action, IPTL seeks recovery of only the portion due to IPTL that is not
disputed.

27.    As indicated above, each of these invoices was reviewed by, and certified as
correctly calculated by, Tanesco's agent Dr. Martin Swales.

---

[2]    Other than US$ 3,599,918  received in February2007 for December 2006 Energy Payment and US$ 3,216,004
received in May 2007 for partial payment of the November 2006 Capacity Payment.

28.    IPTL has demanded on numerous occasions that Tanesco release the undisputed portions of the payments that are overdue, in compliance with the PPA and Tanesco's obligations under the ICSID Award. However, Tanesco has refused to comply with that Award and to comply with its obligations under the PPA.

29.    The consequence of this is that IPTL is facing imminent financial ruin. It is unable to maintain the plant, service its debt and other financial obligations, or to produce electricity when it is needed. It is believed that this is Tanesco's very intent -- to effectively expropriate the plant for its own purposes, by violating the ICSID Convention and ICSID Award.

30.    Despite numerous requests to the Government of Tanzania, it has failed to comply with its obligations under its guarantee of Tanesco's obligations, and has made no payment to IPTL.

## CLAIM FOR RELIEF

31.    IPTL repeats and realleges the allegations contained in paragraphs 1 through 30 as if fully set forth herein.

32.    Based on the terms of the PPA and the ICSID Arbitration Award, TANESCO presently owes to IPTL the sum of US$46,010,506.00 including the overdue interest.

33.    The portion of that sum which is undisputed is US$27,169,882.67 including the overdue interest.

34.    IPTL has made all necessary demands of the Government of Tanzania Guarantee with respect to the sum due.

35.    Based on the terms of the Guarantee, the Government of Tanzania owes to IPTL the sum of US$ 27,169,882.67.

36.    The Government of Tanzania has failed to make the payment as required.

37.   Wherefore, IPTL demands judgment in the sum of $27,169,882.67, against the

Government of Tanzania, on the Guarantee.

Dated:      New York, New York
            November 15, 2007

                              NIXON PEABODY LLP

                              By: _____
                                   Robert C. Sentner (RS 5223)
                              Attorneys for Plaintiff
                              437 Madison Avenue
                              New York, NY 10022
                              (212) 940-3000

# EXHIBIT A

DATED THIS 8TH DAY OF JUNE 1995

BETWEEN

GOVERNMENT OF THE UNITED REPUBLIC OF TANZANIA

AND

INDEPENDENT POWER TANZANIA LIMITED

GUARANTEE

## GUARANTEE

THIS GUARANTEE is made at Dar es Salaam, United Republic of Tanzania the of 8th day of June 1995

BETWEEN:

THE GOVERNMENT OF THE UNITED REPUBLIC OF TANZANIA acting through its Ministry of Water, Energy and Minerals (hereinafter referred to as the "Guarantor") of the one part; and

Independent Power Tanzania Limited a limited company incorporated under the laws of Tanzania, whose registered office is located at 5th Floor, Extelcoms House, Samora Avenue, P O Box 1461, Dar-es-Salaam, United Republic of Tanzania (hereinafter referred to as the "Company") of the other part.

WHEREAS:

(A)   The Guarantor and the Company have entered into an Implementation Agreement (the "Implementation Agreement") dated 8th day of June 1995.

(B)   The Tanzania Electric Supply Company Limited ("TANESCO") has entered into a Power Purchase Agreement with the Company (the "Power Purchase Agreement") dated 26th day of May 1995

(C)   In accordance with Article XXII of the Implementation Agreement, the Guarantor has agreed to enter into this Guarantee of the payment obligations of TANESCO under the Power Purchase Agreement.

**NOW IT IS HEREBY AGREED as follows:**

1    **GUARANTEE**

1.1    **Guarantee**

In consideration of the Company entering into the Power Purchase Agreement with TANESCO the Guarantor hereby irrevocably and unconditionally guarantees and promises to pay the Company any and every sum of money TANESCO is obligated to pay to the Company pursuant to the Power Purchase Agreement TANESCO has failed to pay in accordance with the terms of those agreements.

1.2    **Waiver of Defence**

The obligations of the Guarantor under this Guarantee shall be absolute and unconditional and shall remain in full force and effect until all the covenants, terms, and agreements set forth in the Power Purchase Agreement, shall have been completely discharged and performed, unless waived by the Company in writing. The obligations of the Guarantor shall not be modified or impaired upon the happening from time to time of any event, including the following:

1.2.1    The extension of time for payment of any amounts due or of time for performance of any of the covenants, terms, or agreements of TANESCO, set forth in the Power Purchase Agreement.

1.2.2    Amendments to the Power Purchase Agreement that do not affect in any material way the rights or obligations of TANESCO, or the Company under those agreements.

1.2.3    The failure, omission, or delay by the Company to enforce, ascertain, or exercise any right, power or remedy under or pursuant to the terms of the Power Purchase Agreement, Insurance, or this Guarantee;

1.2.4    The bankruptcy, insolvency, or other failure or financial disability of TANESCO, or the Company; or

1.2.5    The addition, or partial or entire release of any guarantor, maker, or other Party (including TANESCO) primarily or secondarily responsible for the performance of any of the covenants, terms, or agreements set forth in the Power Purchase Agreement or by any extension, waiver, amendment, or thing whatsoever that may release or create a defence for a guarantor (other than performance in accordance with the terms of the Power Purchase Agreement).

**1.3    Continuing Guarantee**

1.3.1  This Guarantee shall be a continuing security and, accordingly, shall extend to cover the balance due to the Company at any time from TANESCO under the Power Purchase Agreement. No demand made by the Company hereunder shall prejudice or restrict the right of the Company to make further or other demands.

**1.4    Additional Security**

1.4.1  This Guarantee shall be in addition to, and not in substitution for or derogation of, any other security that the Company may at any time hold in respect of the obligations of TANESCO under the Power Purchase Agreement.

1.4.2  The Company may enforce this Guarantee notwithstanding that it may hold any other guarantee, lien, or security of or for the obligations of TANESCO under the Power Purchase Agreement or have available to it any other remedy at law or equity.

**1.5    Preliminary Recourse**

1.5.1  Before taking steps to enforce this Guarantee and demanding payment from the GOT, the Company shall be obliged only to make demand in writing for payment from TANESCO. After 30 Days (during which time the Company shall make further requests for payment, with a copy to the GOT of each request, from TANESCO from the date payment was due, the Company may notify the GOT in writing that payment from TANESCO is past due and make a demand for payment from the GOT under this Guarantee, and the GOT shall make payment within five (5) Days. Late payments hereunder shall bear mark-up at an annual rate equal to the then applicable one-year LIBOR rate plus three (3) percentage points. Amounts in dispute under the Power Purchase Agreement shall be deemed not to be due and owing for purposes of this Guarantee until expiration of any dispute resolution procedures provided in each of the respective Agreements.

1.5.2  Except as provided in Article 1.4.1, the Company shall not be obliged before taking steps to enforce this Guarantee to exercise any other remedies that may be available to it under or in respect of the Power Purchase Agreement or to obtain judgment against TANESCO thereon.

**1.6    Certification**

Any demand for payment made pursuant to this Guarantee shall be made in person by a duly authorized officer of the Company at the Guarantors offices at Sokoine Drive, Mkwepu Street, PO Box 2000, Dar es Salaam, United Republic of Tanzania and shall be accompanied by a certificate signed by a duly authorized officer of the Company stating that:

"We hereby certify that (1) [specify Company], (the "Company") is making this demand on the Government of the Republic of Tanzania (the "Guarantor") in the amount of United States Dollars [insert amount] in accordance with Article 1 of the Guarantee dated 8th day of June 1995, between the Guarantor and the Company; (2) the amount specified above is due and payable by the Tanzania Electric Company Limited ("TANESCO") under the Power Purchase Agreement between the Company and TANESCO and no part of the amount specified above is the subject of a dispute between the Parties; (3) demand in writing for payment from TANESCO has been made; (4) for a period of not less than 30 Days from the date payment was due, further request for payment have been made to TANESCO or to obtain the payment of such amount; and (5) such amount, on the date hereof, remains unpaid by TANESCO".

1.7    **Subordination**

Any right that the Guarantor may at any time have to be indemnified by TANESCO in respect of sums paid out by the Guarantor in performance of this Guarantee shall be subordinated to the rights of the Company to recover from TANESCO in full all sums that may at any time become due from TANESCO under the Power Purchase Agreement.

1.8    **No Set-off**

No set-off, counterclaim, reduction, or diminution of any obligation that the Guarantor has or may have against the Company shall be available to the Guarantor against the Company in connection with any obligation of the Guarantor to the Company under this Guarantee; provided, however, that notwithstanding the foregoing the Guarantor shall have the benefit of all rights of set-off, counterclaim, reduction, or diminution of any obligations that are available to TANESCO, pursuant to the Power Purchase Agreement or that are otherwise directly related to the Project.

1.9    **Consent to Jurisdiction**

Each Party hereby consents to the jurisdiction of the courts of London, England for any action filed by the Party to enforce any award or decision of any arbitrator(s) or expert(s) who were duly appointed under this Agreement to resolve any Dispute between the Parties. With respect to any such proceedings for the enforcement of any such award against the assets of a Party (other than the Protected Assets in the case of enforcement proceedings against the GOT):

(a)    The GOT appoints the Commercial Counsellor of The United Republic of Tanzania in London (or, in his absence, a responsible officer in the Tanzania High Commission) whose address is presently 43 Hertford Street, London W1Y 7TF, England to receive for and on its behalf service of process in such jurisdiction in any such enforcement proceeding;

(b)    The Company appoints Mr. Ahmed Daya whose address is presently 242,

Station Road, Edgware, Middlesex HA8 7AR, England to receive for and on its behalf service of process in such jurisdiction in any such enforcement proceeding;

(c) Each Party shall maintain in England a duly appointed agent for the receipt of service of process and shall notify the other Party of the name and address of such agent and any change in such agent and/or the address of such agent; and

(d) Each Party agrees that the failure by any such agent for the receipt of service of process to give it notice of any process that has been served on such agent shall not impair the validity of such service or of any judgment based thereon.

## 2    REPRESENTATIONS AND WARRANTIES

The Guarantor represents and warrants that, as of the date hereof:

### 2.1 Power and Authority

The Guarantor has full power, authority, and legal right to incur the obligation, to execute and deliver, and to perform and observe the terms and provisions of this Guarantee.

### 2.2 Legal Validity

This Guarantee constitutes legal, valid, binding, and enforceable obligations of the Guarantor in accordance with its terms.

### 2.3 Approvals

All necessary action has been taken, and all approvals required have been obtained, under the Laws of Tanzania to authorize the execution, delivery, and performance of this Guarantee.

### 2.4 Tax

In addition to any amount then due and payable to the Company by TANESCO under the Power Purchase Agreement respectively, and payable by the Guarantor under the terms of this Guarantee, the Guarantor shall be liable for any duty, impost, levy, charge, fee or tax of whatsoever nature ("Tax") levied or imposed by a Governmental Authority or any political subdivision or authority thereof on or with regard to any payment hereunder unless the payment, if made by TANESCO would itself have been subject to the Tax. If under applicable law the Guarantor is unable to pay the Tax and the Company is required to pay the Tax, the amount to be paid to the Company hereunder shall be increased by an amount sufficient so that such payment, net of the Tax, would equal the payment the Company would have received from TANESCO net of any Taxes applicable to payment from TANESCO to the Company.

### 2.5 Full Faith and Credit

The obligations and covenants of the Guarantor in this Guarantee constitute unconditional obligations of the Guarantor, for the performance of which the full faith and credit of the Guarantor is pledged.

### 2.6 Sovereign Immunity

The Guarantor irrevocably and unconditionally agrees that it is subject to suit in the England with respect to its obligations hereunder, and that the execution, delivery, and performance of this Guarantee constitute private and commercial acts of the Guarantor. The GOT hereby irrevocably and unconditionally agrees: (i) that should any proceedings be brought against the GOT or its assets, other than its aircraft, naval vessels and other defence related assets or assets protected by the diplomatic and consular privileges under the State Immunity Act of England or the Foreign Sovereign Immunities Act of the United States or any analogous legislation (the "Protected Assets"), in any jurisdiction in connection with this Guarantee or any of the transactions contemplated by this Guaranty, no claim of immunity from such proceedings will be claimed by or on behalf of the GOT on behalf of itself or any of its assets (other than the Protected Assets); (ii) it waives any right of immunity which it or any, of its assets (other than the Protected Assets) now has or may in the future have in any jurisdiction in connection with any such proceedings; and (iii) it consents generally in respect of the enforcement of any judgment against it in any such proceedings in any jurisdiction to the giving of any relief or the issue of any process in connection with such proceedings (including without limitation, the making, enforcement, or execution against or in respect of any of its assets whatsoever (other than the Protected Assets) regardless of the use or intended use of the asset.

## 3    UNDERTAKING

### 3.1 Duration

This Guarantee shall remain in full force and effect from and after the date hereof until the termination of the initial term of the Power Purchase Agreement and for so long thereafter as any amount owned the Company by the Guarantor, TANESCO, in connection with such initial term is or may be outstanding.

### 3.2 Performance of Agreements

The Guarantor shall not take any action that would prevent or interfere with the performance by TANESCO of any of its obligations under the Power Purchase Agreement (except, in the case of any unintentional action, where the Guarantor promptly remedies such action).

## 4   NO WAIVER; REMEDIES CUMULATIVE

### 4.1   No Waiver

No failure or delay by the Company to exercise any right or remedy under this Guarantee shall constitute a waiver of that right or remedy. No single or partial exercise of any right or remedy shall preclude any other or further exercise thereof or the exercise of any other right or remedy. No waiver by the Company shall be effective unless it is in writing.

### 4.2   Remedies Cumulative

The rights and remedies of the Company provided by this Guarantee are cumulative and not exclusive of any rights or remedies provided by law.

## 5   NOTICES

### 5.1   Address for Notice

All notices or other communications (together "Notices") to be given or made hereunder shall be in writing, shall be addressed for the attention of the person indicated below and shall be delivered personally or sent by registered or certified mail or facsimile. All Notices shall be deemed delivered (a) when presented personally, (b) if received on a business Day of the receiving Party, when transmitted by facsimile to the receiving Party's facsimile number specified above and, if received on a Day that is not a business Day of the receiving Party, on the first business Day of the receiving Party following the date transmitted by facsimile to the receiving Party's facsimile number specified above, (c) one (1) Day after being delivered to a courier for overnight delivery, addressed to the receiving Party, at the address indicated above (or such other address as such Party may have specified by notice delivered to the delivering Party at its address or facsimile number specified above) or (d) five (5) Days after being deposited in a regularly maintained receptacle for the postal service in Tanzania, postage prepaid, registered or certified, return receipt requested, addressed to the receiving Party, at the address indicated above (or such other address as the receiving Party may have specified by written Notice delivered to the delivering Party at its address or facsimile number specified above). Any notice given by facsimile shall be confirmed in writing delivered personally or sent by registered or certified mail, but the failure to so confirm shall not render void or invalidate the original notice if it is in fact received by the Party to which it is addressed. The address for service of each Party and its respective facsimile number shall be:

5.1.1  For the Guarantor      :      The Government of United Republic of Tanzania

    *  Attention      :      The Principal Secretary
                                           Ministry of Water, Energy and Minerals

    *  Address       :      Sokoine Drive, Mkwepu Street
                                           PO Box 2000
                                         Dar es Salaam
                                         United Republic of Tanzania

    *  Facsimile     :      51-44071

5.1.2  For the Company       :      Independent Power Tanzania Ltd.

    *  Attention      :      Mr. James Mugemalira

    *  Address       :      5th Floor, Extelcoms House
                                           Samora Avenue, P O Box 1461
                                         Dar es Salaam
                                         United Republic of Tanzania

    *  Facsimile     :      51-46017

    *  with a copy to the Company's counsel:      LONG & COMPANY

    *  Attention      :      Ms. Joanne Long

    *  Address       :      9B Bukit Ceylon, 50200 Kuala Lumpur, Malaysia

    *  Facsimile     :      603- 201 4832

or such other addresses or facsimile numbers as either Party may have notified to the other Party in accordance with this Article 5.1.

**5.2  Effectiveness of Service**

Each Notice under this Guarantee shall be effective only upon actual receipt thereof.

# 6     ASSIGNMENT

## 6.1  Assignment by the Guarantor

The Guarantor may not assign or transfer all or any part of its rights or obligations hereunder without the prior written consent of the Company.

### 6.2 Assignment by the Company

The Company may not assign or transfer all or any part of its rights or obligations hereunder without the prior written consent of the Guarantor. Notwithstanding the provision of the immediately preceding sentence, for the purpose of construction or permanent financing of the GOT, the Company may assign or create a security interest over its rights and interests in and to this Guarantee.

### 6.3 Successors

This Guarantee shall be binding upon and inure to the benefit of the Guarantor and the Company and the respective successors and permitted assigns of each.

## 7   GOVERNING LAW AND ARBITRATION

### 7.1 Governing Law

The rights and obligations of the Parties under or pursuant to this Guarantee shall be governed by and construed according to the Laws of Tanzania.

### 7.2 Arbitration

Any dispute or difference between the Parties arising out of or in connection with this Agreement shall be arbitrated in accordance with Article 21.2 of the Implementation Agreement.

## 8   MISCELLANEOUS

### 8.1 Severability

If one or more provisions contained in this Guarantee is held or found to be invalid, illegal, or unenforceable in any respect, the provision(s) shall be given effect to the extent permitted by law and the invalidity, illegality, or unenforceability of any provision shall not affect the validity of the remaining provisions of this Guarantee.

### 8.2 Definitions

The capitalized terms used but not defined in this Guarantee shall have the meanings given to them in the Implementation Agreement.

IN WITNESS WHEREOF, this Guarantee has been executed the day first above written.

THE GOVERNMENT OF THE UNITED REPUBLIC OF TANZANIA

..........................................                     PRINCIPAL SECRETARY
                                                              MINISTRY OF WATER, ENERGY
By        :   RAPHAEL MOLLEL                                        AND MINERALS
Title     :   PRINCIPAL SECRETARY
              MINISTRY OF WATER, ENERGY AND MINERALS

INDEPENDENT POWER TANZANIA LTD.

..........................................

By        :   JAMES B. RUGEMALIRA
Title     :   DIRECTOR

J. MICHAEL McMAHON
CLERK OF COURT

# UNITED STATES DISTRICT COURT

WWW.NYSD.USCOURTS.GOV
June 7, 2004

SOUTHERN DISTRICT OF NEW YORK
500 PEARL STREET, NEW YORK, NY 10007
300 QUARROPAS STREET, WHITE PLAINS, NY 10601

# 3rd Amended Instructions for Filing an Electronic Case or Appeal

*Important* - your new case is an electronically filed case (ECF case) and you will be <u>required</u> to file documents electronically instead of on paper (with certain exceptions listed below). If you don't have your ECF password yet, you should <u>register now</u> (no fee required) on the CM/ECF page of the Court's website at www.nysd.uscourts.gov Please follow the instructions below.

**ECF Judges:**

| | | | | | | |
|---|---|---|---|---|---|---|
| Baer *** | Castel ** | Griesa ** | Knapp *** | McMahon * | Preska * | Stein * |
| Batts * | Cedarbaum*** | Haight ** | Koeltl * | Motley *** | Rakoff ** | Swain ** |
| Berman ** | Chin ** | Hellerstein ** | Kram *** | Mukasey * | Robinson * | Sweet * |
| Brieant * | Conner * | Holwell ** | Leisure ** | Owen *** | Sand *** | Wood ** |
| Buchwald ** | Cote ** | Jones ** | Lynch ** | Patterson *** | Scheindlin ** | Magistrate- |
| Carter *** | Daniels ** | Kaplan * | Marrero ** | Pauley ** | Sprizzo *** | Judges * |
| Casey ** | Duffy *** | Keenan ** | McKenna *** | Pollack ** | Stanton *** | |

*    ECF Wave 1 Judge, assigning new cases filed on or after December 2, 2003 to the ECF system.
**   ECF Wave 2 Judge, assigning new cases filed on or after March 1, 2004 to the ECF system.
***  ECF Wave 3 Judge, assigning new cases filed on or after June 7, 2004 to the ECF system.

**Important note on non-ECF cases:** Older cases filed prior to the above dates, as well as Pro Se cases, Habeas Corpus cases, Social Security cases, and Multi-District Litigation <u>will not be electronically filed</u> and should be filed on paper. Do not file documents electronically in cases that are not assigned to the ECF system.

## Instructions

(1)    Electronic cases are opened and service of the initiating documents (complaint, notice of removal, etc.) is accomplished in the traditional manner, on paper.

(2)    *Important* - In addition to serving the initiating documents in the traditional manner, on paper, you are also required to deliver paper copies of the following documents to all other parties (copies available at the courthouse, & on our website):

   (a) The assigned Judge's Individual Rules
   (b) USDC/SDNY Instructions for Filing an Electronic Case or Appeal (this document)
   (c) USDC/SDNY Procedures for Electronic Case Filing
   (d) USDC/SDNY Guidelines for Electronic Case Filing.

(3)    <u>Within 24 hours of the assignment of a case number</u>, you are required to <u>email</u> to the Clerk of Court the initiating documents <u>in Adobe Acrobat pdf format only</u>. Failure to do so within 24 hours will delay adding your case to the computerized ECF docket. Include a F.R.C.P. Rule 7.1 Statement (if applicable) and any exhibits. The case number, the Judge's initials, and "ECF CASE" must appear in the document's case caption. Each document must be in a separate pdf file <u>no larger than 2.5 megabytes</u> (separate large computer files into smaller parts if necessary, and label accordingly). When sending email, the subject line of the email & the file name of the pdf should list only the case number followed by a document description (ex. "Re: 01cv1234-complaint"). Send the email (do not file on the ECF system) to:

   (a) For new civil cases assigned to a Manhattan Judge, email a pdf copy of the documents to

   **case_openings@nysd.uscourts.gov**

   (b) For new civil cases assigned to a White Plains Judge, email a pdf copy of the documents to

   **wpclerk@nysd.uscourts.gov**

USDC/SDNY Instructions for Filing an Electronic Case or Appeal          Page 2 of 2

**(4)**     File the Affidavit of Service for the initiating document (complaint, notice of removal, etc.) in the following manner:

      **(a)** electronically file the Affidavit of Service for the initiating document on the ECF system (do not send by email),
      **(b)** file the original Affidavit of Service with summons attached in the traditional manner, on paper with the Clerk.

**(5)**     All subsequent documents, including the Defendant's Answer, <u>must be filed electronically</u> on the ECF system at **ecf.nysd.uscourts.gov**. Electronic filing involves using your ECF password to docket the item directly into the ECF system. <u>Electronic filing is not the same as email to the Clerk.</u> Read the Judge's Individual Rules to determine if courtesy copies (on paper) are required.

**(6)**     Appeals will be assigned to the ECF system only if the original case was also electronically filed. File the appeal in the traditional manner, on paper. Then within 24 hours of filing the paper copy of your Appeal at the courthouse, you are required to email to the Clerk of Court an electronic copy of the Appeal in pdf format. Include any exhibits. Each document must be in a separate pdf file no larger than 2.5 megabytes. The District Court case number, the Judge's initials, and "ECF CASE" must appear in the document's case caption.

      When sending email, the subject line of the email should always list the case number followed by a document description (ex. "Re: 01cv1234-appeal"). Send the email (do not file on the ECF system) to:

      **(a)** For appeals from an ECF case assigned to a Manhattan Judge, email a pdf copy of the appeal to

               **appeals@nysd.uscourts.gov**

      **(b)** For appeals from an ECF case assigned to a White Plains Judge, email a pdf copy of the appeal to

               **wpclerk@nysd.uscourts.gov**

**(7)**     Follow all the rules for Electronic Case Filing (available at <u>www.nysd.uscourts.gov</u>):

      **(a)** SDNY Procedures for Electronic Case Filing       **(d)** Local Rules of this Court, and
      **(b)** SDNY Guidelines for Electronic Case Filing     **(e)** Federal Rules of Civil Procedure
      **(c)** Individual Rules of the Assigned Judge

### ✓ Learn More About Electronic Case Filing at www.nysd.uscourts.gov

✓   Click on the "<u>CM-ECF</u>" page for the official ECF filing rules, training information, computer requirements, and more.

✓   Attorneys should use the "<u>Attorney Registration</u>" page to register on-line for a SDNY ECF password (no fee). Your ECF password will be sent to you by email. You must have an ECF password from SDNY District Court to file documents electronically.

✓   Sign up now for a SDNY PACER account if you don't already have one. Call (800) 676-6856, or go to http://pacer.psc.uscourts.gov

✓   Electronically file documents in ECF cases over the Internet at **ecf.nysd.uscourts.gov**

✓   Don't have a computer or scanner? Bring your ECF password and the paper documents to the courthouse, and you can use our public computers to electronically file your documents. Call the ECF Help Desk for more information.

✓   The **ECF Help Desk** is available to answer your ECF questions from 8:30 AM to 7:00 PM at (212) 805-0800, and from 8:30 AM to 5:00 PM at (914) 390-4204, and by email at **help_desk@nysd.uscourts.gov**

**WWW.NYSD.USCOURTS.GOV**

May 10, 2005

**INDIVIDUAL PRACTICES OF MAGISTRATE JUDGE EATON**

Unless otherwise ordered by Judge Eaton, matters before Judge Eaton shall be conducted in accordance with the following practices. These practices are applicable to matters before Judge Eaton if the matter is within the scope of the District Judge's Order of Reference or if the case is before Judge Eaton pursuant to the parties' consent under 28 U.S.C. § 636(c). Otherwise, the practices of the District Judge to whom the case is assigned apply.

**1. Communications With Chambers**

**A. Letters.** Copies of letters to chambers shall simultaneously be delivered to all counsel. Copies of correspondence between counsel shall not be sent to the court.

**B. Telephone Calls.** In addition to Paragraph 1(D) below, telephone calls to chambers are permitted. For matters other than docketing, scheduling, or calendaring, call chambers at 212-805-6175.

**C. Faxes.** Faxes to chambers are permitted only if copies are also simultaneously faxed or delivered to all counsel. No document longer than 10 pages may be faxed without prior authorization. Please follow with hard copy. The fax number is 212-805-6181.

**D. Docketing, Scheduling, and Calendar Matters.** For docketing, scheduling, and calendar matters, call Helen Lewis at 212-805-6183 between 8:30 A.M. and 4:30 P.M.

**E. Requests for Adjournments or Extensions of Time.** All requests for adjournments or extensions of time must state (1) the original date, (2) the number of previous requests for adjournment or extension, (3) whether these previous requests were granted or denied, and (4) whether the adversary consents and, if not, the reasons given by the adversary for refusing to consent. If the requested adjournment or extension affects any other scheduled dates, a proposed Revised Scheduling Order (reflecting only business days) must be attached. If the request is for an adjournment of a court appearance, absent an emergency it shall be made at least 48 hours prior to the scheduled appearance.

**2. Motions**

**A. Pre-Motion Conferences in Civil Cases.** For discovery disputes, follow Judge Eaton's Standing Order for Discovery Disputes, attached hereto as Appendix A. For motions other than discovery motions, pre-motion conferences are not required.

**B. Courtesy Copies.** Courtesy copies of all motion papers, marked as such, should be submitted for chambers.

**C. Memoranda of Law.** Unless prior permission has been granted, memoranda of law in support of and in opposition to motions are limited to 25 pages, and reply memoranda are limited to 10 pages. Memoranda of 10 pages or more shall contain a table of contents.

**D. Filing of Motion Papers.** Motion papers shall be filed promptly after service.

**E. Oral Arguments on Motions.** Parties may request oral argument by letter at the time their moving or opposing or reply papers are filed. The court will determine whether argument will be heard and, if so, will advise counsel of the argument date.

## 3. Pretrial Procedures

**A. Joint Pretrial Orders in Civil Cases.** Unless otherwise ordered by the Court, within 30 days from the date for the completion of discovery in a civil case, the parties shall submit to the court for its approval a joint pretrial order, which shall include the following:

    i. The full caption of the action;

    ii. The names, addresses (including firm names), and telephone and fax numbers of trial counsel.

    iii. A brief statement by plaintiff as to the basis of subject matter jurisdiction, and a brief statement by each other party as to the presence or absence of subject matter jurisdiction. Such statements shall include citations to all statutes relied on and relevant facts as to citizenship and jurisdictional amount;

    iv. A brief summary by each party of the claims and defenses that each party has asserted which remain to be tried, without recital of evidentiary matter, but including citations to all statutes relied on. Such summaries shall identify all claims and defenses previously asserted which are not to be tried;

    v. A statement by each party as to whether the case is to be tried with or without a jury, and the number of trial days needed;

    vi. A statement as to whether or not all parties have consented to trial of the case by a magistrate judge (without identifying which parties have or have not so consented);

    vii. Any stipulation or agreed statements of fact or law which have been agreed to by all parties;

    viii. A statement by each party as to the witnesses whose testimony is to be offered in its case in chief, indicating whether such witnesses will testify in person or by deposition;

# APPENDIX A TO THE INDIVIDUAL PRACTICES OF
## MAGISTRATE JUDGE EATON

UNITED STATES DISTRICT COURT
UNITED STATES COURTHOUSE
500 PEARL STREET
NEW YORK, NEW YORK 10007-1312

DOUGLAS F. EATON
UNITED STATES MAGISTRATE JUDGE

Standing Order for Discovery Disputes in Cases
Assigned to Magistrate Judge Douglas F. Eaton

¶1.   Conference requirement.  Rule 37(a)(2)(A and B), Fed. R. Civ.
P., requires the attorneys to confer in good faith in an effort to
resolve or narrow all discovery disputes before seeking judicial
intervention.  "Confer" means to meet, in person or by telephone,
and make a genuine effort to resolve the dispute by determining,
without regard to technical interpretation of the language of a
request, (a) what the requesting party is actually seeking, (b)
what the discovering party is reasonably capable of producing that
is responsive to the request, and (c) what specific genuine issues,
if any, cannot be resolved without judicial intervention.  The
exchange of letters between counsel stating  positions "for the
record" shall not be deemed compliance with this requirement, or
with Rule 37(a)(2)(A and B).   Failure to hold a good faith
conference is ground for the award of attorney's fees and other
sanctions.  28 U.S.C. §1927;  Apex Oil Co. v. Belcher Co., 855 F.2d
1009, 1019-20 (2d Cir. 1988).

¶2.   Depositions.

     a.  No one may instruct a witness not to answer, except upon
grounds of privilege, or as permitted by Rule 30(d)(1), Fed. R.
Civ. P.  All other objections, including objections as to
relevance, may be briefly stated on the record, but the question
must be answered.

     b.  If privilege is asserted, the person claiming privilege
must answer the predicate questions necessary to establish the
applicability of the privilege.  See Local Civil Rule 26.2.

     c.  Disputes relating to privilege or procedure at a
deposition, and applications to terminate or limit a deposition
pursuant to Rule 30(d), may be brought to my attention by telephone
conference (if I am available) without adjourning the deposition.
(NOTE:  Telephone conferences are limited to disputes about a
deposition taking place that very day.  Any other disputes must be
submitted by joint letter; see below at ¶ 3.)  My telephone number
is 212-805-6175.  The following procedures apply to such telephone
conferences:

1

(1)  All attorneys present at the deposition must participate in the telephone conference by speakerphone or extension telephone.

(2)  Unless otherwise directed by me, the witness shall be out of the room during the argument of the issues raised.

(3)  The reporter must be available to read the verbatim text of any matters in dispute, and shall record and transcribe the entire telephone conference as part of the record of the deposition.

(4)  The parties' time to seek review pursuant to Rule 72(a), Fed. R. Civ. P. of any ruling made during a telephone conference shall commence to run on the date of receipt of the transcript.

¶3.  All other discovery disputes (including disputes about adjournments).

a.  Local Civil Rule 37.2 speaks of a first request for an informal conference with the court; however, in discovery disputes before me (except for disputes about a deposition taking place that very day), you should not bother to request an informal conference. Instead, proceed as follows.  Following compliance with ¶ 1, above, counsel must submit a single joint letter, signed by each counsel of record who is a party to the dispute, and giving each counsel's telephone number and fax number. The joint letter should identify each issue which requires judicial intervention, and state the position of each party on the first issue before moving to any second issue.  The joint letter should be faxed to 212-805-6181, provided that the letter is no longer than 12 pages, and provided that a manually signed original is thereafter mailed.  (I prefer to be able to review the letter quickly in fax form, even if I may have to wait for exhibits to arrive by mail.)  The mailing should enclose the manually signed letter, plus any exhibits.  The mailing should also enclose a courtesy copy of the joint letter (but not a courtesy copy of any exhibits).  If you send your adversary a draft of your portion of a joint letter and he or she does not send you a responsive portion within 5 business days, you may send your portion to me (with another copy to your adversary, and an explanation of the circumstances).  You must wait for the 5 days even if there are fewer than 5 business days before a discovery deadline.

b.  I wish to encourage the parties to change their positions and to offer compromises.  Hence, each side may re-write or delete

2

portions of its draft position. To avoid unreasonable delay, the parties should confer again and make a genuine effort to produce a final version of the joint letter that each party is willing to sign as a fair statement of its final position.

c.    The joint letter must be limited to a statement of what discovery still remains in dispute, and <u>why</u> each party believes it should or should not be ordered. Citation of case law is desirable. It is usually unnecessary to recite the procedural history in detail. It is usually unhelpful to include subjective matters such as opinions about the motives of your adversary.

d.    If interrogatories, document requests, or responses are in dispute, the joint letter must enclose the text of the specific items in dispute (and only those items).

e.    I will normally decide such disputes on the basis of the joint letter, with <u>no oral argument</u>. If I want affidavits, briefs, or a conference, I will inform counsel.

f.    Submissions under ¶ 3 shall be deemed to be motions pursuant to Rule 37 and may provide the basis for me to award expenses and other sanctions.

g.    My requirement for a single joint letter applies also to non-parties. If a party foresees that it may have a discovery dispute with a non-party, then it shall serve the non-party with a copy of this Standing Order.

DOUGLAS F. EATON, U.S.M.J.

Revised as of 4/19/05

3

# INDIVIDUAL RULES OF THE
## HONORABLE ALVIN K. HELLERSTEIN
## SOUTHERN DISTRICT OF NEW YORK

### Effective October 4, 2007

**Chambers**
Room 1050
United States Courthouse
500 Pearl Street
New York, New York 10007
Tel: (212) 805-0152
Fax: (212) 805-7942

**Courtroom**
Room 14D
United States Courthouse
500 Pearl Street
New York, New York 10007
(212) 805-0127

Unless otherwise ordered by Judge Hellerstein, matters before Judge Hellerstein shall be conducted in accordance with the following practices:

1. **Communications With Chambers**.

    A. **Letters.** Copies of letters to Chambers shall simultaneously be delivered to all counsel in no less speedy a manner than the method of delivery to the Court. Counsel shall not copy the Court on correspondence between and among them. Refer to Rule 2.E below for letters concerning disputes.

    B. **Method of Delivery.**

        (a) Copies of documents may either be mailed to Chambers or left with the Court Security Officer at the Worth Street entrance of the Courthouse. Papers shall not be delivered directly to Chambers **except following special permission to do so.**

        (b) Faxes may be sent **only for urgent matters** requiring an immediate response from Chambers, or **following special permission** (see special rule regarding adjournments and extensions below). Do not follow with a hard copy.

    C. **Telephone Calls.** Telephone calls to chambers are permitted. However, do not call Chambers with procedural questions that are covered by the Local Rules of this Court and the Federal Rules of Civil Procedure. For docketing, scheduling and calendar matters, **except** for matters relating to September 11-related Litigation, call Brigitte Jones, Courtroom Deputy, at (212) 805-0127. For questions or information relating to the September 11 Litigation, please check our website: www.nysd.uscourts.gov (Click on "cases"). For requests for adjournments or extensions, see the following paragraph.

    D. **Requests for Adjournments or Extensions of Time.** All requests for adjournments or extensions of time **must be made in writing** and must state: (1) the original date; (2) the number of previous requests for adjournment or extension; (3) whether these previous requests were granted or denied; (4) whether the adversary consents, and, if not, the reasons by the applicant, and by the adversary, for and against the relief requested, and (5) all

other dates previously scheduled after the original date, including dates for conferences with the Court, and a suggested modified schedule, agreed to by all other counsel. If the request is for an adjournment of a court appearance, absent an emergency, it should be made at least 48 hours prior to the scheduled appearance. **DO NOT call Chambers or Courtroom to announce your intention to request an adjournment. Requests for adjournments or extensions of time (under 3 pages) may be made by fax without permission to fax. DO NOT call Chambers to ask for permission to fax a letter requesting an adjournment or extension.**

E. **ECF Cases.** All civil and criminal cases (except Pro Se and special cases) filed on or after March 1, 2004 assigned to Judge Hellerstein are Electronic Case Filings ("ECF"). All counsel must register for ECF in each case pending before this Court. Counsel are responsible for checking their registered email and court docket sheet for memo-endorsements and orders. If you are not receiving such emails, please contact the ECF Help Desk at (212) 805-0800.

2. **Pleadings & Motions.**

A. **Pre-Motion Conferences in Civil Cases.** Pre-motion conferences, or permission to file motions, are not required.

B. **Filing of Motion Papers.** Motion papers shall be filed promptly after service. All motions, and courtesy copies of motions, shall include a table of contents listing all affidavits and exhibits. Affidavits and exhibits shall be clearly identified by tabs on both original and courtesy copies. Exhibits shall be marked sequentially such that no exhibit number or letter repeats, regardless of the affidavit to which it is attached. Exhibits for plaintiffs should be marked by numbers; exhibits for defendants should be marked by letters.

C. **Courtesy Copies.** Courtesy copies of all pleadings, motions and supporting papers shall be submitted to Chambers. Courtesy copies are required in cases following electronic filing procedures.

D. **Return Dates; Oral Argument on Motions.** Motions shall be returnable on any day of the week. Counsel should not appear in Court on the return date. The Court prefers oral argument on motions and will schedule the date and time for argument.

E. **Disputes.** Unless directed otherwise, counsel should describe their disputes in a single letter, jointly composed. Separate and successive letters will be returned, unread. Strict adherence to Fed. R. Civ. P. 37(a)(2)(A), the meet and confer rule, is required, and should be described in the joint submission as to time, place and duration, naming the counsel involved in the discussion.

3. **Pretrial Procedures**

A. **Joint Pretrial Orders in Civil Cases.** Following the close of discovery, unless otherwise ordered by the Court, a final pretrial conference will be scheduled as close as possible to the date that the trial is scheduled to begin. The parties shall submit, three days

prior to that conference, for the Court's approval, a joint pretrial order, which shall include the following:

i.      The full caption of the action.

ii.      The names, addresses (including firm names), e-mail addresses, telephone and fax numbers of trial counsel.

iii.      A brief statement by plaintiff as to the basis of subject matter jurisdiction, and a brief statement by each other party as to the presence or absence of subject matter jurisdiction. Such statements shall include citations to all statutes and cases relied on and relevant facts as to citizenship and jurisdictional amount.

iv.      (a)      A brief summary of the claims and defenses to be tried, without recital of evidentiary matter but including citations to all statutes and cases relied on; and

         (b)      A copy of the pleadings marked to show, for each claim and defense, in the margin next to each allegation thereof, the admissions and denials; and if any claims or defenses have been withdrawn or previously determined.

v.      A statement as to whether the case is to be tried with or without a jury, and the estimated number of trial days (including direct and cross-examination for all witnesses).

vi.      A statement as to whether or not all parties have consented to trial of the case by a magistrate judge (without identifying which parties have or have not so consented).

vii.      Any stipulations or agreed statements of fact or law.

viii.      A list of each party's witnesses actually intended to be called, and, if the witness cannot be present and will testify through deposition, the precise portions of deposition transcripts actually intended to be introduced together with any cross-designations and objections by any other party. (If voluminous, this portion of the submission may be made after the pretrial conference, on a date set at the conference).

ix.      A list of exhibits actually intended to be offered at trial, indicating exhibits to which no party objects on grounds of authenticity and exhibits to which no party objects on any ground. (If voluminous, this portion of the submission may be made after the pretrial conference, on a date set at the conference). Exhibits for plaintiffs should be marked by numbers; exhibits for defendants should be marked by letters; and plaintiffs and defendants shall bring to the conference loose-leaf exhibit binders of all exhibits they actually intend to offer at the trial.

**B.**      **Filings Prior to Trial in Civil Cases.** On or before a date set by the Court, prior to trial, each party shall submit, in duplicate:

i.      A pretrial memorandum, describing the party's position on the factual and legal issues to be tried;

       ii.     In jury cases, proposed requests to charge and proposed voir dire questions;

       iii.    In non-jury cases, proposed findings of fact and conclusions of law for each claim and defense; and

       iv.    The submissions described in ii and iii above shall be in both hard copy and electronically in MS Word format (by email or CD-Rom).

**4.     Confidentiality Provisions.**

    **A.     Protective Orders.**  Court records and docket sheets are to be accessible to the public, and enjoy a presumption of openness to public inspection.  The presumption "is rebuttable upon demonstration that suppression is essential to preserve higher values and is narrowly tailored to serve that interest."  The Hartford Courant Co. v. Pellegrino, 371 F.3d 49, 63 (2d Cir. 2004) (internal quotation marks and citations omitted).  Accordingly, no protective order shall be submitted that provides for sealing of documents or other information in connection with a submission to the court, except following a motion supported by competent evidence showing that sealing is essential to preserve higher values and is narrowly tailored to serve that interest.

    **B.     Disputes.**  The parties are directed to cooperate in seeking to resolve disputed issues of confidentiality prior to filing material designated as "confidential," or "confidential attorneys' eyes only," for example, by redaction of documents to be filed on the public record or by stipulation of facts.  In the event that such issues are not resolved promptly, the parties should seek direction from the Court by a single, joint letter as described above in Rule 2.E.

    **C.     Settlements.**  In the case of settlements, requests that the court retain jurisdiction will be considered only if all documents relating to the settlement are filed and publicly accessible, except for cause shown satisfying Rule 4A.

## DECLARATION OF SERVICE

Bradford C. Mulder, hereby declares under penalty of perjury pursuant to 28 U.S.C. § 1746.

I am Managing Clerk at the law firm of Hunton & Williams LLP, attorneys for Defendant The Government of the United Republic of Tanzania.

That on January 22, 2008, I served a true copy of the attached Declaration of Joseph E. Sokoine, with Exhibits, on Plaintiff's counsel at the address listed below, by depositing the same in a duly enclosed and sealed wrapper, for Federal Express Next Day Overnight Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  January 22, 2008.

_____
Bradford C. Mulder

TO:    Robert C. Sentner, Esq.
       NIXON PEABODY LLP
       437 Madison Avenue
       New York, New York  10022

       *Attorneys for Plaintiff*